# White v. Tolliver.

## Action of Assumpsit.

1. *Evidence; proof of handwriting.*—The testimony of a witness, who testified that he was not acquainted with the handwriting of the alleged author of a letter, but that the signature to the letter and the handwriting in the body of it was like other handwriting he had seen, which purported to be the signature of the alleged author, is insufficient as preliminary proof of the alleged author's handwriting, looking to the admission of the letter in evidence.

2. *Same; same; admissibility of letter without proof of handwriting.*— Where a letter is shown to have been received through the mail by a witness and had inclosed in it a paper which the witness sent by mail to the person whose name was signed to the letter, and the envelope inclosing it bore the postmark of the town of such person's residence, and the letter was received in due course of mail and referred to the communication written by witness to said person in which said paper was inclosed, such letter, if otherwise admissible, is sufficiently identified to be admissible in evidence without proof of the handwriting of the alleged author.

3. *Same; report of case in official reports not admissible in evidence.*— The report of a case decided by the Supreme Court on appeal and published in a volume of the official reports of the court is not admissible as evidence in the trial of a case.

4. *Attorney and client; compensation for services.*—An attorney may,

[White v. Tolliver.]

before entering upon the business of his client, lawfully contract for the measure of his compensation, and any contract then made is as valid and unobjectionable as if made between other persons not occupying fiduciary relations, and who are, in all respects, competent to contract with each other; but after the fiduciary relation has commenced, no subsequent agreement with his client for compensation can be supported, unless it is a fair, reasonable and just remuneration for the attorney's services.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was on the common counts, brought by the appellee, Sol Tolliver, against the appellant, H. K. White, to recover $250, with interest from March 1, 1892.

Besides the general issue, the defendant filed a plea of payment, and a plea of set off, averring in the latter that the plaintiff was indebted to him in the amount claimed, by an agreement made between plaintiff and defendant in January, 1891, whereby the defendant was employed to represent plaintiff as attorney in a certain case pending in the city court of Montgomery, wherein plaintiff was charged with the larceny of fifteen head of cattle, and was also employed to procure bail for plaintiff pending the trial of said case; and averring further that, after he had been employed by plaintiff and after he had performed part of the said services, he was discharged by plaintiff and prevented from performing the remainder of said services, without fault on his part.

The defendant also filed a special plea averring the same facts set out in plea of set-off, and further, that one hundred and fifty dollars of the sum which defendant collected from the sale of certain real estate belonging to plaintiff, had been retained by him in payment of his fee in accordance with the terms of agreement with plaintiff, and also as a reasonable fee for the services performed, and contracted to be performed. No demurrerers were interposed to any of these pleas, and the trial was had upon issue joined thereon.

The plaintiff as a witness in his own behalf testified that he never employed the defendant as his attorney to defend him in the case in which he was prosecuted for grand larceny, and never agreed to pay him anything.

The evidence offered by the plaintiff as to the reason-

[White v. Tolliver.]

ableness of the fee for defending a person indicted as was the defendant, and for the services alleged to have been rendered by the defendant for the plaintiff, varied in its estimates from $25 to $175.

The defendant introduced evidence tending to show that while the plaintiff was imprisoned in the county jail in Birmingham, Alabama, the defendant went to see him at the jail, at the request of a person whom the plaintiff had asked to employ a lawyer for him, and that on said visit the plaintiff employed the defendant as his attorney to defend him against the charge upon which he was then confined, and "to endeavor to restore his liberty by all legal means;" that no contract was then made as to the amount of the fee which the defendant was to charge the plaintiff, but that Tolliver told him that he owned a house and lot in Montgomery which were worth seven or eight hundred dollars, and with that property the defendant's fee would be secured, and that he was able and willing to pay defendant a sufficient fee for defending him.

The plaintiff had been indicted by the grand jury of Montgomery county for the larceny of 15 head of cattle, and was apprehended in Birmingham, where he was imprisoned in the county jail, and was in jail under said charge at the time the defendant had his first interview with him. Subsequently the plaintiff was removed to the county jail of Montgomery county, in which county his trial was afterwards had.

The evidence for the defendant further tended to show that immediately upon his being employed by the plaintiff, he sued out a writ of *habeas corpus* before the judge of the criminal court of Jefferson county, and had the amount of the plaintiff's bail fixed at $300, and then spent several days endeavoring to get the bond made for the plaintiff; that after he had succeeded in getting a bond for the plaintiff approved, he was removed to the jail at Montgomery county. After Tolliver was removed to Montgomery, the defendant received a letter from him requesting him to come to Montgomery to sell his house in order to get money to procure a bail bond; that the defendant went to Montgomery, and after spending several days, incurring a great deal of trouble and expense, he succeeded in selling the house and lot owned by the plaintiff; that after paying off the incumbrances

which were on said property, the defendant received from
said sale $225.70, and that after paying the expenses of
his trip, hotel bills, etc., incurred by him in plaintiff's
service, while in Montgomery, the defendant had $206.50
of the money obtained from the sale of the plaintiff's
house and lot.

The testimony for the defendant further tended to
show that after he learned the exact charge against the
plaintiff and the main facts of the case, which were en-
tirely different from the facts which the plaintiff had
stated to him while in jail at Birmingham, the plaintiff
entered into a contract with the defendant to pay him
$250 in consideration of defendant's undertaking to de-
fend the case against him throughout, and to endeavor
to procure bond for him ; and it was agreed between the
plaintiff and the defendant that the money obtained
from the sale of the property of the plaintiff should be
used primarily in making bond for the plaintiff, and,
secondarily, in securing the payment of the defendant's
fees. With the money obtained from the sale of the prop-
erty the defendant procured a bond in the sum of $300,
the amount which had been fixed, and mailed it to Judge
Arrington of the city court of Montgomery for approval ;
that said bond was returned to him, inclosed in a letter
from Judge Arrington, unapproved. About a month
afterwards, when the defendant had returned to Birm-
ingham from his trip to Montgomery in plaintiff's be-
half, and had procured a bail bond for plaintiff, and had
performed considerable services in his case, the plaintiff
wrote him not to come to Montgomery to defend him, as
plaintiff's mother would furnish him a lawyer. The de-
fendant thereupon wrote him that he had been employed
in the cause, and was willing to do all things necessary
and incident to his employment, and was ready, willing
and able to carry out his contract, but plaintiff prevented
him from continuing in the case.

The testimony for the defendant further tended to
show that a reasonable fee for defending such a case as
the plaintiff's would be $150 to $200. It was shown by
evidence that the defendant retained $150 of the amount
remaining of the purchase money from plaintiff's lot;
and had paid $56.50 to John G. Winter, Esq., on the
order of the plaintiff.

On the trial of the cause when the defendant was

giving his testimony, and at the time he introduced in evidence the appearance bond which he had obtained for the plaintiff, he offered to introduce a letter purporting to be from Judge Arrington, accompanying the bail bond when returned. The facts in reference to this letter are sufficiently stated in the opinion. Upon the plaintiff's objection to its introduction in evidence, the court sustained the objection, and the defendant duly excepted. The defendant also offered to read in evidence the report of the case of *Tolliver v. State* (which was the plaintiff's case) reported in the 94 Ala. Reports ; but, upon the plaintiff's objection, the court refused to allow the case to be read, and to this ru'ing the defendant duly excepted.

At the request of the plaintiff, the court gave to the jury the following written charges : (1) "The court charges the jury that if Tolliver, if shown by the evidence, was in jail in Montgomery before any certain amount of fee was agreed upon with the defendant, and if they further believe from the evidence that before that time, and while he was in Birmingham, he, the plaintiff, had employed White as his attorney, then Tolliver would not be bound to White for anything more than a reasonable fee, no matter what contract as to the amount of fee may have been so made in Montgomery." (2.) "The court charges the jury that they have a right to say what amount of fee White was entitled to, if they believe from the evidence that after said White was engaged as an attorney in said case, and after he had entered upon the service of plaintiff as an attorney, he made a contract with Tolliver for a sum certain." (3) "If the jury believe from the evidence that the defendant, White, received money belonging to plaintiff, the burden of proof would be on White to show by a preponderance of evidence his right to hold same." (4.) "If White is entitled to charge Sol Tolliver anything, and the evidence shows to your reasonable satisfaction that there was no special contract, he would not be entitled to charge more than a reasonable fee for the services contracted for." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following written charges requested by him : (1.) "The court charges the jury that if they believe from the evidence that the plain-

tiff, Sol Tolliver, agreed and promised to pay defendant the sum of $250 for representing him and defending him in a case pending against him in the city court of Montgomery, and that the said Sol Tolliver discharged the defendant, and prevented him from rendering said services on account of no fault of defendant, then they shall find for the defendant." (2.) "The court charges the jury that if they believe from the evidence that the plaintiff, Sol Tolliver, employed the defendant to represent him as his attorney in reference to the indictment against the said Sol Tolliver in the city court of Montgomery, and agreed to pay the said defendant $250, for said services, and if they further believe from the evidence that the said defendant was discharged from the said case by the plaintiff, and that the defendant was thereby prevented from fulfilling his contract on account of no fault of defendant, then they shall find for the defendant." (3.) "The court charges the jury that if they believe the testimony of the defendant, H. K. White, they shall find for the defendant."

There were verdict and judgment for the plaintiff for $139.37. Thereafter the defendant moved the court to grant a new trial on the ground that the verdict of the jury was contrary to the evidence, contrary to the law in the case, and that the court erred in its rulings upon the charges. This motion was overruled, and to this ruling the defendant duly accepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN M. MARTIN, JAMES A. MITCHELL and H. K. WHITE, for appellant.—1. A person is admitted to be acquainted with the handwriting of another person, when he has received documents purporting to be written by that person in answer to documents written by him to that person, and, *a fortiori*, the fact that a letter was received in answer to one written to a person, accompanied by a document which had been inclosed to that person, is sufficient proof of the letter. Therefore, the court erred in refusing to allow the letter from Judge T. M. Arrington of the city court of Montgomery, to be read in evidence; and the court also erred on this point for the further reason that courts take judicial notice of the signatures of commissioned officers acting in their official

[White v. Tolliver.]

capacity.—Rice on Evidence, pp. 342, 343 and cases cited; Stephen's Dig. of Evidence, Art. 51.

2. A decision of the Supreme Court, and the opinion as reported in the Alabama Reports, is competent evidence to show that such a case was appealed to the Supreme Court, the serious nature of the case against a party, and the facts of such case, when these matters are involved in another proceeding. Therefore, the court erred in refusing to allow the case of *Toliver v. The State*, 94 Ala. 111, to be read to the jury.

3. An agreement made by an attorney with his client as to the amount of fee after the relation of attorney and client had begun, is not void, for the Supreme Court of Alabama has only gone so far as to hold that it can not be supported unless it is satisfactorily shown that the compensation does not exceed a just and fair remuneration for the services to be rendered. There being evidence in this case showing that the fee of $250 was a reasonable fee, the court erred in giving written charge No. 2 requested by the plaintiff.—*Dickinson v. Bradford*, 59 Ala. 583.

4. If an attorney is prevented by his client from completing his contract, he will be entitled to recover his fees as if the contract were fully performed; therefore, charges 1 and 2 requested by defendant should have been given.—1 Amer. & Eng. Encyc. of Law, 966; *Myers v. Crockett*, 14 Texas, 257; *Kersey v. Garton*, 77 Mo. 645; *Cantrell v. Chism*, 5 Snead (Tenn.) 116.

HILL, ROQUEMORE & ROGERS, *contra*.

McCLELLAN, J.—There was no satisfactory proof that the letter offered in evidence by the defendant, and purporting to bear the signature of T. M. Arrington, was signed by said Arrington. The only witness examined with reference to the matter, testified that "he had never seen Judge Arrington write his name, and did not know that he was acquainted with his handwriting, but that the signature to the letter and the handwriting in the body of it, was like other writing he had seen purporting to be the signature of Judge Arrington." This was insufficient as preliminary proof of *handwriting*.—1 Greenl. Ev., § § 575 *et seq*. But the witness, who was the defendant, further testified that he had mailed a cer-

tain appearance bond to Judge T. M. Arrington, of the
City Court of Montgomery, that he had received this
letter inclosed with the same appearance bond; that the
envelope inclosing the bond and letter was postmarked,
"Montgomery, Ala., January 26, 1891," and was re-
ceived in due course of mail. The letter itself referred
to that written by defendant to Judge Arrington inclos-
ing the bond, and gave reasons why the writer would
not approve said bond. On these facts, we think the
letter should have been admitted in evidence without
proof of the handwriting of T. M. Arrington.—1 Greenl.
Ev., § 573a, citing *Ovenston v. Wilson*, 2 Car. & Kir. 1;
*Ib.*, § 577, n. 2, citing *Kinney v. Flynn*, 2 R. I.319; *McKon-
key v. Gaylord*, 1 Jones, Law, (N. C.) 94.

This letter bore upon contested issues of fact in the
case, and tended in some degree to support the defen-
dant's view of them. The error involved in its exclusion
must, therefore, work a reversal of the judgment.

The court committed no error in refusing to allow the
defendant to read the report of the case of *Toliver v.
The State*, 94 Ala. 111, published in a volume of the re-
ports of this court, to the jury as evidence.

All the rulings of the court on requests for instruc-
tions, except with respect to charge 3 given for plaintiff,
are referable to, and proper under, the principle that "an
attorney may, before entering on the business of his
client, lawfully contract for the measure of his compen-
sation; and any contract then made is as valid and un-
objectionable as if made between other persons compe-
tent to contract with each other; but after the fiduciary
relation has commenced, no subsequent agreement with
his client for compensation can be supported, unless it
is a fair and just remuneration for his services"—de-
clared by this court in *Dickinson v. Bradford*, 59 Ala.
581—in connection with the evidence which showed
that the contract relied on by the defendant, whereby
plaintiff was to pay him a certain compensation, was en-
tered into after the relation of client and attorney had
been established.

Charge 3 given for plaintiff is not abstract, and as-
serts that if the jury find that the defendant received
money belonging to the plaintiff, the burden of proof
would be on him to show by a preponderance of evidence
his right to hold the same. If this charge was suppos-

ed to involve a tendency to mislead the jury from due consideration of the circumstances under which the money came to defendant's hands, an explanatory instruction should have been requested. It is not otherwise objectionable.

It is unnecessary to pass upon the order of the city court refusing a new trial.

Reversed and remanded.