JOSEPH MORTON, Executor of Estate of JAMES F. PITT, v. ZEILDA FORSEE, Appellant.

In Banc, April 8, 1913.

1. **CONTRACT: For Services to be Performed: Death Before Completion: Recovery: Contract Sum as Basis: Quantum Meruit.** Where an attorney enters into a written contract reciting that he is to be paid a certain sum for his services in connection with a certain suit, and dies before final judgment is rendered therein, his administrator is entitled to recover for the services actually rendered, and the amount of his recovery is such a proportionate part of the contract price for the whole as the services actually rendered bear to the whole services required. The amount to be paid in case of a successful termination of the suit is to be taken as the basis for ascertaining the reasonable value of the services actually performed. The common law rule that a contract for personal services is an entirety and no recovery can be had under the contract if for any reason (even death) there has been a failure to perform, even if it existed at common law, is repudiated.

   *Held*, by WALKER, J., dissenting, with whom LAMM, C. J., and BOND, J., concur, that, where the contract authorized the attorney to represent the defendant in a certain suit and for his services defendant agreed "to pay him in any event a reasonable fee, and if the defense is entirely successful a fee of not less than $25,000," and the attorney died before the termination of the suit, the recovery should be on the basis of a *quantum meruit*, and the jury should not be authorized to take $25,000 as the basis for ascertaining

Morton v. Forsee.

the reasonable value of the services performed and to award plaintiff a proportionate amount of that sum, but they should be instructed to award such reasonable compensation as would fairly compensate the attorney for the services actually rendered, taking into consideration the character and ability of the attorney, the importance of the suit, and the results obtained.

2. ———: ———: Attorney and Client: Fiduciary Relation: Burden: Section 964. Where the relation of attorney and client is shown to have existed at and prior to the time a written contract for his services to be rendered in the defense of a suit was entered into, the amount to be paid being made to depend upon a successful defense, and the attorney died before a decision was reached in the case, in a suit by his administrator for the value of the services rendered the burden is on the plaintiff to show that the contract was fair and just and that the attorney took no undue advantage of his client. An attorney sustains a confidential relation to an existing client; and the statute declaring that an attorney may enter into a contract for his compensation for services, "which is not restrained by law," did not, as to attorneys, change the rule of law to the effect that where a fiduciary relation is shown to have existed between the parties at the time the contract was made, the burden, in a suit thereon, shifts to the one sustaining the advantageous confidential relation and seeking to profit by the contract.

*Held*, by GRAVES, J., with whom FARIS, J., concurs, that, the execution of the contract being admitted, it is properly admitted in evidence as fixing the value of the services rendered and to be rendered, without any further proof; and that, though the attorney occupied and had occupied for a number of years a confidential relation to defendant, the contract is not presumptively fraudulent, and the burden is not on plaintiff to show that the attorney made full disclosures to defendant, and in no wise took advantage of the relation, before making the contract. The statutes (Secs. 964, 965, R. S. 1909) take contracts between attorneys and clients out of the general rule as to the presumption of fraud and as to shifting the burden of proof. To hold that the burden shifts to the attorney to show that the contract sued on is fair and reasonable, would be to subject to revision and modification by a court or jury a contract the parties had made for themselves, and to render it entirely useless for an attorney to make a contract with his client.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

AFFIRMED.

*Joseph E. Corby, Vinton Pike* and *Brown & Eastin* for appellant.

(1) The pretended fee contract was inadmissible in evidence and should have been excluded from the consideration of the case. White v. Tolliver, 20 So. 97; Dickinson v. Bradford, 59 Ala. 581; Ryan v. Ashton, 42 Iowa, 365; Nesbit v. Lockman, 34 N. Y. 167; Place v. Haywood, 117 N. Y. 497; Bingham v. Sheldon, 91 N. Y. Supp. 917; Greenfield's Estate, 14 Pa. St. 504; Thomas v. Turner, 87 Va. 1; Staley v. Dodge, 50 Ill. 45; Elmore v. Johnson, 143 Ill. 513; Burnham v. Haseltine, 82 Me. 495; Huguenin v. Baseley, 14 Ves. 273; Cleine v. Engelbrecht, 41 N. J. Eq. 498; Whipple v. Barton, 63 N. H. 613; Tait v. Williamson, 2 Ch. App. 60; Cadwallader v. West, 48 Mo. 383; Barnes v. McCarthy, 132 S. W. (Tex.) 85; Stephens v. Dubois, 31 R. I. 138. (2) There was no evidence to support the fee contract. The evidence on rebuttal, that this, or a larger, sum agreed to between parties dealing at arms' length, would be reasonable, has no tendency to prove that defendant understood she was dealing at arms' length in the business with Pitt, or ''that he did not take undue advantage of his client's complacency, confidence, ignorance or misconception.'' The judgment of these witnesses was that in fixing the amounts the attorney should provide for all possible contingencies, thus resolving all doubts in his own favor, whereas he could not deal for himself. Bingham v. Sheldon, 91 N. Y. Supp. 920; Greenfield's Estate, 14 Pa. St. 506; Blaikie v. Post, 122 N. Y. Supp. 292. (3) The question was not what would have been a reasonable sum to agree to pay upon the contingency of a successful defense of a suit of the exaggerated aspect presented hypothetically to the witnesses, but whether defendant knew all that Pitt was obliged to advise her of, and that all the care and providence was placed around her, as against Pitt himself, which

from his situation and relation to her he was bound
to exert on her behalf. Did she force him to serve
her for a large sum, when she could have procured
the same service for one-fifth that amount? Hunter
v. Atkins, 3 My. & R. 113; Cleine v. Englebrecht, 41
N. J. Eq. 498; Burnham v. Haseltine, 82 Me. 495. (4)
The contract was not apportionable. Story on Bail-
ments, 417a; 2 Am. & Eng. Ency. Law (2 Ed.), 477;
Cutter v. Powell, 6 Term. Rep. 320; Bream v. Marsh,
4 Leigh (Va.), 31; Yates v. Ballentine, 56 Mo. 530;
Haysler v. Owen, 61 Mo. 270; Callahan v. Shotwell,
60 Mo. 398; Baylor v. Morrison, 2 Bibb, 103; Landa
v. Shook, 30 S. W. (Tex.) 536; Haynes v. Baptist
Church, 12 Mo. App. 536; Coe v. Smith, 6 Ind. 81;
Parker v. Macomber, 17 R. I. 674; Teney v. Berger,
93 N. Y. 529; Fullmer v. Poust, 155 Pa. St. 275. The
ancient common law was strictly opposed to apportion-
ment of contracts. It is now statute law in Missouri,
R. S. 1909, sec. 8047, and the rule cited is not suscep-
tible of the flexible application that plausibly may be
contended for in jurisdictions whose courts have been
free "to make their own common law." 8 Cyc., Title,
"Common Law." The court erred in submitting the
case upon the second count, and in allowing a recovery
thereon. And instructions asked by defendant exclud-
ing evidence in support of the second count should
have been given.

*Culver, Phillip & Spencer* and *James W. Boyd*
for respondent.

(1) The court did not err in admitting the fee
contract. The fact that the relation of attorney and
client existed between Pitt and defendant did not pre-
clude them from contracting with each other. At most
it only placed upon Pitt the burden of showing that in
making the contract no advantage was taken of the
relationship, and that the contract was fair and rea-
sonable and understandingly entered into by appel-

lant. Having submitted ample proof to meet this burden the contract was admissible. Bogie v. Noland, 96 Mo. 85; Feurt v. Ambrose, 24 Mo. App. 367; Street v. Goss, 62 Mo. 228; Goodrick v. Harrison, 130 Mo. 263; 1 Story Eq., sec. 311; Dickson v. Kimpinsky, 96 Mo. 258; Cutts v. Young, 147 Mo. 599; Kirschner v. Kirschner, 113 Mo. 296; Ennis v. Burnham, 159 Mo. 518; French v. Cunningham, 49 N. E. 799. (2) The contract of employment being valid, and death having prevented its full performance by Pitt, his executor is entitled to recover the reasonable value of the services rendered, measured by the value of all the services to be performed as fixed by the contract. Clark v. Gilbert, 26 N. Y. 279; Wolfe v. Howes, 20 N. Y. 203; Hargrave v. Conroy, 19 N. J. Eq. 281; Johnson v. Commissioners, 78 Pac. 45; 20 Am. & Eng. Ency. Law (2 Ed.), 44; Fenton v. Clark, 11 Vt. 857; Hughes v. Cash Register Co., 112 Mo. App. 101; Callahan v. Shotwell, 60 Mo. 398; Yates v. Ballentine, 56 Mo. 534; Marsh v. Richards, 29 Mo. 105; Rhude v. Mitchell, 97 Mo. 371; Hillyard v. Crabtree, 11 Tex. 263; Brittain v. Turner, 6 N. H. 481.

GRAVES, J.—This is an action to recover an attorney's fee alleged to be due the estate of James F. Pitt, deceased, formerly a practicing attorney in the city of St. Joseph, Missouri.

Counsel for the defendant thus summarizes plaintiff's petition:

"This action is by the executor of the late James. F. Pitt, against Mrs. Forsee, to recover for services rendered defendant as attorney at law in defense of the suit of the Attorney-General of Missouri against her, which suit was begun in Buchanan Circuit Court and finally determined on appeal in this court, on April 11, 1907. [203 Mo. 418.] This cause was tried upon an amended petition, which contained three counts. The first count set up a contract between the

Morton v. Forsee.

testator Pitt and defendant whereby defendant purported to promise to pay to Pitt a reasonable fee in any event and if the defense was entirely successful a fee of not less than $25,000. It alleges that Pitt defended the suit successfully in the circuit court and continued his services in the case until his death, April 10, 1906; that after his death the judgment of the circuit court was affirmed by the court by reason of Pitt's skill and services and his contract had been practically and substantially performed and asks judgment for the $25,000.

"The second sets up the same contract and performance by Pitt and alleges that after Pitt's death defendant was successful also in this court at an expense not exceeding $2500; that his services were of the reasonable value of $25,000, for which judgment was asked.

"The third count is a *quantum meruit* for the same services demanding $25,000."

The written contract referred to in the pleadings thus reads:

IN THE CIRCUIT COURT OF BUCHANAN COUNTY,
MAY TERM, 1904.

EDWARD C. CROW, Attorney-General of the State of Missouri,
Plaintiff,

v.

ZEILDA FORSEE, Defendant.

I hereby authorize James F. Pitt, Esq., to represent me as counsel in the defense of the above entitled cause, and for his services as such I agree to pay him in any event a reasonable fee, and if the defense is entirely successful a fee of not less than twenty-five thousand dollars. Further, I agree to pay all necessary and proper expenses incidental to the conduct of such litigation, including travelling expenses and to furnish at my own expense associate counsel whenever I may deem the same necessary.

Witness my hand this, 6th day of April, 1904.

ZEILDA FORSEE.

Agreed to in duplicate, this April 6, 1904.

JAMES F. PITT.

The plaintiff did not by answer deny the formal execution of this contract, but pleaded by way of avoidance, but conceding an obligation to pay the reasonable value of the services rendered by Pitt in the suit named in the contract. That portion of her answer reads:

"Defendant for further answer and defense states the facts to be that for a long time prior to the alleged special employment of plaintiff's testator in the matter mentioned in the petition at said time and subsequent thereto said testator for ample compensation duly paid was the confidential and legal adviser of defendant, and her true and lawful attorney for her and in her name, place and stead to direct and control the management of her estate, real and personal, wherever situate, to have possession of her business office, books and papers, to employ a manager, bookkeeper and such other agents and persons as might in his judgment be necessary from time to time, to execute all manner of instruments, such as deeds, deeds of trust, mortgages, leases, real leases, bonds, contracts, notes, drafts, checks, receipts and all other instruments obligatory or otherwise, defendant reposing in him and said testator accepting the fullest confidence in respect to all her affairs; that she was possessed of a considerable estate in the management whereof more skill, strength, experience and knowledge of commercial and business affairs and legal rights and duties in respect thereto were required than defendant was capable of devoting to it, and hence her employment of said testator in the capacity and relation aforesaid; that the largest part of her estate consisted of property inherited by her as the sole heir of the late Amanda Corby, and the suit of the Attorney-General of Missouri related to property so inherited, the claim of the Attorney-General being founded upon a clause of the will of the late John Corby, who died seized and possessed of the estate de-

fendant inherited from said Amanda Corby, who had acquired said estate partly by the will of said John Corby and partly by purchase of his heirs; that said claim was groundless and had been so considered by the public in dealings in respect to said estate with the devisees and heirs of said John Corby and their grantees and by the legal profession and in effect had been held to be groundless by the highest court of the State, which was well known to plaintiff's testator, but the legal status of said Corby estate was not known or comprehended by defendant except as she was advised by said testator as her confidential counsel and attorney; nor had she ever been advised of possibility of the claim made by the Attorney-General's suit; neither was the defendant acquainted with the course and practice of the courts and the value of legal services, as to all of which she put her fullest confidence in and relied upon plaintiff's testator as her counsel and attorney aforesaid. Being much disturbed and agitated by the suit brought as aforesaid by the Attorney-General, seeming to her an officer of great dignity and power, and made apprehensive for her estate by the array of attorneys engaged to prosecute said suit, one of whom she knew had been the attorney and legal adviser of John Corby and Amanda Corby and possessing a confidential knowledge of the history and condition of said Corby estate, and without the protection or advice of anyone but plaintiff's testator, who did not inform her of the true situation in which she was placed, she at said testator's request and induced by her confidence in him, signed a paper which is referred to in the petition as a contract between said testator and defendant; that said instrument was improvidently entered into on defendant's part and wrongfully obtained on the part of said testator, who persuaded her to execute it without advising her of the real nature and grounds of said suit and without faithfully trying to dispel her alarm and apprehension,

and putting her on her guard against the influence thereof, and without affording her the protection of assistance and advice by some competent person other than himself, and who was not interested in the transaction; that the value of testator's services which he appeared to engage to perform in said suit would not have been worth $25,000, and said sum grossly exceeded any value of such service which would have been reasonably contemplated, and it was an unjust and unfaithful act for said testator to induce or permit defendant to sign the alleged contract or to obligate and burden herself as she thereby appears to have done and plaintiff ought not to have and maintain the action thereupon or have any benefit by reason thereof.

"Defendant further says that said testator at the time aforesaid had received and was receiving regular and liberal compensation for his services as her attorney in the direction and control of her estate; and from time to time as occasion rose special compensation for his legal services which he considered extra his general duties aforesaid (all said matters being intrusted to him), and he was paid his charges therefor out of defendant's funds; and there was no occasion or reason for specially engaging him in the Attorney-General suit, as he was by his general employment required to appear for or represent her in the defense thereof. Defendant concedes that for such services as he performed in said suit before his death he was entitled to a reasonable compensation, but the amount claimed by the plaintiff is grossly excessive and exhorbitant.

"Wherefore defendant prays that the pretended contract in the petition mentioned be held for naught and that defendant be discharged of any claim or liability on account of the same."

The reply placed in issue the new matter of the answer. Upon a trial had the plaintiff recovered under the second count of the petition a verdict in the sum of $18,750, and from a judgment entered against her in accordance with such verdict defendant has appealed to this court.

The evidence can best be discussed in connection with the points presented for our decision and further statement need not be made.

I. At the outset we are met with one question which, if defendant's contention is correct, requires the reversing of this judgment and the remanding of the cause. The question raised bespeaks further details as to facts. Pitt tried and won the case in the circuit court, but the cause was appealed to this court, and was not heard and determined here until about one year after the death of Pitt. The recovery in this case was upon the second count of the petition, which count is on the theory that Pitt's estate is entitled to recover such proportionate part of the contract price for the whole, as the services rendered by him bore to the whole services required. Plaintiff contends, and the jury found, that the Pitt estate was entitled to recover the reasonable value of the services rendered, measured by the value of all the services to be performed as fixed by the contract. Defendant contends that there can be no proportioning of the services at the contract rate; that a contract for personal services is an entirety, and no recovery can be had under the contract, if for any reason (death included) there has been a failure to fully perform. The first count of this petition was on the theory of full performance. The second count was likewise in one sense on the contract, but on the theory of proportioning the recovery on the basis of the work done as compared with the portion remaining to be done

*Margin note: Contract for Services: Death Before Performance.*

under the contract. If, therefore, the contention of defendant, as above indicated, is correct, the verdict in this case cannot stand, because it is the result of a wrong theory of the law of the case. We do not believe that on this question defendant's contention has the sanction of the modern cases. It may have been well founded at common law, but does not seem to have the approval of the courts at the present time. In other words, the strict common law rule has been departed from by the courts in later years.

In 20 Am. & Eng. Ency. Law (2 Ed.), p. 44, it is said:

"According to an early English decision, the rule that full performance of an entire contract is a condition precedent to the servant's right to recover anything under the contract, unless he has just grounds for abandoning it, or is excused by the master from full performance, is applicable even in case of the servant's death during the term. The decisions in the United States hold that the rule has no application in the case of a servant's death during the term; that death will excuse performance of an entire contract, and that a recovery will be permitted on a *quantum meruit* for services performed, the amount of recovery being subject to reduction by the amount of damages, if any, sustained by the employer in consequence of the servant's not being able to complete the stipulated term of service, and the recovery in no case exceeding the contract price or the rate of it for the part of the service performed."

The courts are not uniform in the wording of the rule. Some place it squarely upon the doctrine of proportioning the fee according to the service rendered, taking the contract price as the basis, whilst others denominate it a *quantum meruit* action, with the contract price fixing the value of all the services, which contract price should be lessened

Amount of Recovery Where There Was Contract.

in the recovery by what damages the other party has sustained by the failure of full performance. The damages would be such as would be occasioned by getting another to complete the service and matters incident thereto. Slightly different theories are advanced by other courts.

It is sufficient to say that the common law rule contended for by the defendant does not now obtain.

Thus in New Jersey, in the case of Hargrave v. Conroy, 19 N. J. Eq. l. c. 285, it is said: "His services were what the defendant bargained for. If accident, sickness, or death, had prevented his performing his engagement at all, he would have been entitled to no pay. Where part has been performed, and the performance of the residue prevented without the fault of either party, he is entitled to pay in proportion, at the rate agreed upon for the whole."

So too it is said in Clark, Executor, v. Gilbert, 26 N. Y. l. c. 282:

"This court decided, in Wolfe v. Howes, 20 N. Y. 197, that, where a person is prevented by sickness or death from fully performing a contract for his personal services, which he has partially performed, compensation may be recovered for the services actually rendered by him under the contract. That decision shows that the plaintiff, as executor, may recover, in this case, compensation for the services his testator rendered for the defendant, although he was prevented by sickness and death from performing all he was to render according to the agreement between them; also, that the agreement is: 'of consequence' in measuring or regulating the compensation to which the plaintiff is entitled: The latter conclusion is irresistible, for the reason that the agreement was not rescinded by the death of the testator but remained in force, so far as to show his employment by the defendant and the value of the services rendered under it. Besides, it would be palpably unjust to disregard the stipulated

value of the testator's services, for it is evident that he was employed in consequence of his integrity and capacity for the services required; and to allow the defendant now to reduce the value of such services by proof of the sum for which he could have employed another person to perform the same services, in whom he might or might not have had confidence, would enable him, according to the first decision of the referee, to gain more than $20,000 by the testator's death.

"The question whether a servant, who has not fully performed his contract, is, prima facie, entitled to recover the stipulated value of the services actually rendered, when disabled by sickness from serving the full term agreed upon, was not properly before the Supreme Court in Fahy v. North, 19 Barbour, 341. The servant, in that case, recovered fifty cents per month less than his employer was to pay him, according to the agreement between them, but he did not appeal from the judgment; his employer was the appellant, and the only material question determined on the appeal was, whether the sickness of the servant was an excuse for his not working the length of time agreed upon; and the court held it was.

"There is no case which holds that where the full performance of a contract for personal services is prevented by the sickness or death of the party, who was to render the services, a greater compensation can be recovered than the stipulated value, on proof that the services were worth more than such value. But there are decisions, that the recovery in such a case cannot exceed the contract price, or the rate of it for the part of the service performed. [Cole v. Smith, 4 Ind. 79; Allen v. McKibbin, 5 Mich. 449.] The doctrine was asserted in Allen v. McKibbin, that the servant cannot be permitted to gain by his sickness, nor can the employer be permitted to lose by it.

"The Supreme Court of Vermont held in Patrick v. Putnam, 27 Vt. 759, that a person contracting to

labor for a definite term, who fails to fulfill his contract by reason of sickness, is liable to have the amount of his recovery reduced from the contract price, by the damages sustained by his employer, in consequence of his not being able to complete the full term of service. This rule is equitable; and it should be applied to such cases, although the servant is not to be regarded as violating his contract, in consequence of his inability fully to perform it, by reason of his sickness or death. His failure fully to perform his contract, for such a cause, is his misfortune and not his fault; and his employer should neither gain nor lose by it.

"This rule is just to the servant as well as the employer; and it should have been applied to this case. Much more might be said in favor of this rule, but it needs no vindication; it is so well grounded in good sense it sufficiently commends itself. It may be said to be a common sense rule, and common sense is the basis of all just law."

In the more recent case of Johnston v. Board of Commrs., 78 Pac. (N. M.) l. c. 45, 12 N. M. l. c. 244, PARKER, J., says:

"We think there is no error in the court's action in regard to the second cause of action, of which the plaintiff can complain. The plaintiff's decedent, an attorney at law, was prevented by death from performing the contract. The most plaintiff could recover would be the reasonable proportion of the contract price which the services rendered bear to the whole services contracted for, or, as otherwise stated, the reasonable value of the services performed, and not the whole contract price. [Am. & Eng. Ency. (2 Ed.) 430; Cyc. 984; Baylor v. Morrison, 2 Bibb (Ky.), 103; Clendinen v. Black, 2 Bailey (S. C.), 488; Callahan v. Shotwell, 60 Mo. 398; Hardin v. McKitrick, 5 J. J. Marsh (Ky.), 667; Gordon v. Miller, 14 Md. 204; Bills v. Polk, 4 Lea (Tenn.), 494; Landa v. Shook, Tex Civ. App., 31 S. W. 57.] The pleadings do not indicate that

any such theory was adopted, or that evidence of the reasonable value of the services would be admissible under them; and we assume that the case was tried upon the theory that the whole contract price was due. In this the plaintiff was in error and could not complain of a judgment against him *in toto,* much less of one in his favor.''

In 26 Cyc. 1043, it is said: ''As has been previously shown in the sections of another chapter, death of either party to a contract of employment, or sickness or other disability preventing the employee from performing the contract, terminates the contract unless it is otherwise agreed. But sickness, or death, of the employee is generally regarded as an act of God which excuses performance so that a recovery may be had for services actually performed. And the fact that an employee who has been sick does not return and offer to complete the period of service, after his health is restored, does not prevent a recovery. But where the sickness ought to have been anticipated, as in case of confinement in child birth, no recovery can be had on a *quantum meruit* after the servant has left the work because thereof. Whether the recovery is to be based upon the reasonable value of the services, or upon the contract wage, is the subject of conflicting decisions; but at any event the damages sustained by reason of non-performance are to be deducted. Recovery can only be had for the completed services, and not for services for the entire contract period, and ordinarily no recovery is allowable for the time which the employee loses during his sickness or other disability.''

This doctrine would seem to have the approval of this court. In Callahan v. Shotwell, 60 Mo. 398, it is said: ''It would seem that the proper course to have pursued in this case for the plaintiff to have recovered damages for the breach of the contract with defendant's testator, would have been a proceeding to set

aside the conveyance upon a tender of so *much of the fee· agreed on* as was really due." The italics are ours. Governor King as a lawyer had died before completing his contract for legal services, and his contract was involved in the Callahan case.

To my mind the sounder rule is that in a case where there have been no other consequential damages to the surviving party than the employment of other counsel to continue .the work, the executor of the deceased . lawyer should be entitled to recover on the basis of. the contract price for the services actually performed. Death does not put .a party in default in matters of contract. The contract is still of value in determining the price of the services. This rule necessarily calls for the proportioning of the fee as to work performed and work not performed at the date of death. It would also allow the direct and consequential damages occasioned· by the stopping of the work. Such would cover what the party had been forced to pay out and expend in money and trouble in having the remainder of the work done.

In the case at bar we .think instruction numbered two fairly covers the law of the case, because there was no evidence of any consequential damages, except the price paid for other counsel, for the remainder of the work. This instruction reads:

"The jury are instructed that it is admitted in this case that the defendant, Zeilda Forsee, entered into a contract with James F. Pitt on the 6th day of April, 1904, by which she employed him as her attorney to defend the suit brought by the State of Missouri at the relation of Edward C. Crow, Attorney-General, against her, and that in and by the said contract the defendant agreed to pay Pitt for his services a reasonable fee in any event, and if the defense of said suit was entirely successful, a fee of not less than twenty-five thousand dollars. And you are instructed that even though Pitt was in the employ of Mrs. For-

see as her attorney and agent and sustained a relation of trust and confidence towards her at the time he made the contract to defend the suit above mentioned, still the contract between him and Mrs. Forsee was valid and binding, if you believe from the facts and circumstances in evidence that in making said contract Pitt did not abuse the confidence reposed in him by Mrs. Forsee, and that he practiced no imposition or undue influence upon her and took no advantage of her, and that he acted honestly and fairly in making the contract with her, and that Mrs. Forsee voluntarily, and knowing the nature and effect of the agreement, made the contract of employment and that under all the circumstances said contract as entered into was fair and reasonable, and if you find that said contract was a valid contract, then the court instructs you that you will take twenty-five thousand dollars as the value of all the services which Pitt was to perform under his contract, and ascertain the reasonable value of the services performed by Pitt based on twenty-five thousand dollars as the value of all the services to be performed by him, and return a verdict in favor of the plaintiff for such sum on the second count of the petition. On the other hand, if you find from the evidence that the contract between Pitt and Mrs. Forsee was not fairly and understandingly entered into as hereinbefore recited, then you will disregard the contract and determine from the facts and circumstances in evidence the reasonable value of the services rendered by Pitt in said case and return a verdict for the sum so found, on the third count of the petition.''

If the contract was valid (a question we discuss next) the defendant by this contract had indicated her views of the value of Mr. Pitt's services. She ought not be permitted to show a less value. She has agreed that $25,000 was the value of the completed services and should be bound thereby unless there

are reasons for relieving her of this agreement. This contention of the defendant is therefore ruled against her.

II. Defendant next urges that there was no evidence to support the fee contract and that it should not have been introduced in evidence. There are several aspects to this contention and we take them separately.

(a) Should there have been evidence to show the reasonable value of the contract, and to show that Pitt, occupying a confidential relation to defendant, had made full disclosures to her before making the contract? (b) Should said contract be held presumptively fraudulent, or the result of undue influence, under the relationship shown at the time of its execution? And (c) if proof was required to rebut the claimed presumption, was such proof made by the defendant? That Pitt was the attorney and business agent of the defendant for some years prior to this contract, and was at the time under contract with her as her legal adviser, there is no question. Does this of itself preclude the admission of the contract in evidence, until such evidence is introduced by plaintiff as will rebut such presumption? This question is an important one under the peculiar statutes of this State, and stands right at the threshold of this case. To our mind the execution of the contract standing admitted, it was properly admitted in evidence as fixing the value of the services rendered and to be rendered, without any further proof. We say this advisedly and not without duly considering the well founded equitable doctrine which raises the presumption of undue influence and fraud, where a fiduciary relation stands admitted or is shown. This rule which arrays this presumption of fact against a contract made between parties holding a fiduciary relation one

*Attorney: Confidential Relation.*

to the other, and which shifts the burden of proof upon the beneficiary of such a contract, is well recognized in this State, and with it we have no quarrel. But under the statutes that rule is not applicable to the contract under consideration. We have here a contract between attorney and client, which contract has been taken from under the ban of the legal rule above announced by express statutes in this State. Such statutes leave all persons, irrespective of their relationship, free to contract as attorney and client. In other words, the statutes take this class of contracts out of. the general rule as to the presumption of fact as stated above, as well as to the shifting of the burden of proof. Under our statutes such contracts can be defended against on the grounds of fraud, undue influence, mistake, unreasonableness and other such things just as other contracts, but these are matters of defense, and the burden of establishing such defense is upon the party invoking it.

Our statutes, sections 964 and 965, Revised Statutes 1909, read:

"Sec. 964. The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

"Sec. 965. In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto*, it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered

him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted. thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as hereinabove provided between such attorney and his client.''

Section 964 is the only one necessary to discuss here, but we insert the other because it has been fully discussed in this State, and such discussions bear upon the question before us. The first section, supra, was taken almost bodily from the New York statutes. We enacted it in 1901, and New York in 1879. [Fischer-Hansen v. Railroad, 173 N. Y. 1. c. 497.] It has often been construed in New York. In 1899 the New York statute of 1879 was further amended by pro-

viding for a new remedy. In 1876, a lien was provided for, but the statute there contained the first twenty-three words of our statute. In 1879 the lien clause was added in New York as found in our statute. Then in 1899 these words as to the remedy were added: "The court upon the petition of the client or attorney may determine and enforce the lien."

Speaking of the completed statutes of 1899, the New York court thus analyzes it in the Fischer-Hansen case, supra:

"Thus we have a statute gradually progressing in one direction, which has required more than half a century for its development. It consists of only three sentences, but each has been the subject of one or more independent enactments intended to protect attorneys and enable them to collect pay for their services. The first establishes freedom of contract between attorney and client with reference to the compensation of the former. The second and most important gives the attorney a lien upon his client's claim and cause of action, and when the cause of action is merged in a verdict, report, decision or judgment, the lien attaches to that also as well as to the proceeds thereof, so that it cannot be affected by a settlement made between the parties at any stage of the action. The third provides a new remedy."

The clause of our own statute in which we are interested on the facts of this case is the first clause, our first sentence of twenty-three words, which the New York court says establishes the freedom of contract between attorney and client.

In Matter of Fitzsimons, 174 N. Y. l. c. 23, the court says: "In view of the fact that by express statute the right is conferred upon an attorney or counselor to regulate the amount of his compensation by agreement with his client, which is unrestrained and unlimited by law, we cannot see how such an agreement can be interfered with and held illegal until the

question has been fully and fairly investigated and the facts relating to the transaction plainly established by a trial. The statute conferred upon the parties the right to make the contract, and conferred upon the court no authority to make it for them. If, however, upon a proper examination of the appellant's claim, it shall be found that the agreement between himself and his client was induced by fraud, or that the compensation provided for was so excessive as to evince a purpose to obtain improper or undue advantage, the court may correct any such abuse.''

In Werner v. Knowlton, 94 N. Y. Supp. l. c. 1057, it is said: ''Further than this, under the first request which was charged it was necessary for the jury to find that the minds of the parties had fairly met upon this contract, and therefore the second request, construed in connection with the first one, could only mean that the plaintiffs could not recover unless the jury approved of the rate of compensation fixed, and would have been willing upon a *quantum meruit* to allow the compensation which had been expressly agreed upon by the parties. We do not think that an attorney who expressly fixes the rate of compensation with a client, in the absence of some evidence of fraud or overreaching, is compelled to submit the validity and binding force of his agreement to any such test as this. The Code expressly provides that 'the compensation of an attorney or counsel for his services is governed by agreement, express or implied, which is not restrained by law.' If the contention of the counsel for the appellant upon the facts as developed in this case is correct, it would be entirely useless for an attorney to make an agreement fixing his compensation. Any agreement which he and his client might make fixing for the protection of both the value of the services to be rendered would always be subject to revision and modification by a

court or jury, which might entertain a different idea of values.''

So too in Ransom v. Cutting, 98 N. Y. Supp. 1. c. 284, it is further said: ''An attorney or counselor at law, by express provision of statute, can agree with his client as to the amount to be paid for services to be rendered (Sec. 66, Code Civ. Proc.) and an agreement made for that purpose, in the absence of evidence showing that a fraud has been perpetrated on the client, or that he did not fully understand the purport of the agreement, must be enforced like other contracts, according to its terms. The statute gives the right to an attorney and client to make a contract as to the former's compensation, and it is a matter of no importance, when the contract is brought under review, what the compensation agreed to be paid is, providing the contract is legal in other respects. The court cannot make contracts for parties, and only has power to construe them as made. If the contract as made were the result of a fraud practiced upon the client, or if it appeared that the compensation were so excessive, in view of the services rendered, as to indicate that an improper or undue advantage had been taken of the client, then relief would be afforded. But that is not this case.''

In the Werner and Fitzsimons cases, supra, the contracts discussed were entered into sometime after the relation of attorney and client came into existence.

The courts of this State have recognized the construction given to this statute by the New York courts.

Thus in Curtis v. Met. Street Ry. Co., 118 Mo. App. 1. c. 349, it is said: ''Section 1 of this statute is an exact copy of section 66 of the New York Code prior to its amendment in 1899. The amendment consisted of the addition of this sentence: 'The court upon the petition of the client or attorney may determine and enforce the lien.' The statute has been

before the courts of last resort in New York for construction and application. [Peri v. Railroad, 152 N. Y. 521; Fischer-Hansen v. Railroad, 173 N. Y. 492; Matter of Regan, 167 N. Y. 338; Bailey v. Murphy, 136 N. Y. 50; Barry v. Railroad, 84 N. Y. Supp. 830; Marvin v. Marvin, 19 N. Y. Supp. 371; Goodrich v. MacDonald, 112 N. Y. 163.] And our conclusions are largely influenced by the reasoning to be found in these cases. *In the enactment under consideration we find expressed a legislative recognition of the right of an attorney to contract with his client for compensation on account of professional services to be rendered.* In such contract, the compensation to be received may consist entirely of an agreed percentage of the proceeds of any settlement of the client's cause of action made either before or after judgment.''

In Beagles v. Robertson, 135 Mo. App. l. c. 322, in discussing the second section of our statutes (Sec. 965), GOODE, J., said: ''The statute authorizes attorneys and clients to enter into contracts for a contingent compensation to the attorney, either before or after a legal proceeding is instituted; but plaintiff's counsel insists, nevertheless, that an attorney can be given nothing under such a contract until he has proved affirmatively the client was not induced to agree by fraud or improper practice which would constitute an abuse of the confidential relation of the parties. Bargains between attorneys and clients, especially those where property is acquired by the attorney by gift or purchase, are jealously watched; and in such cases the attorney has been compelled, usually, to establish the *bona fides* of the transaction as the condition on which it would be permitted to stand. [Barrett v. Ball, 101 Mo. 288; Weeks, Attorneys (2 Ed.) sec. 273.] It may be the same rule has been applied in suits to enforce contracts not authorized by statute for contingent compensation to an attorney; though we do not recall any reported

decision wherein an attorney seeking to enforce such
an agreement was held to be bound, in order to make
out his case in chief, to assume the burden of proving
he had not induced his client to enter into the agree-
ment by fraud, or an abuse of confidence; unless,
perchance, the sum stipulated looked like an exorbi-
tant charge for the service alleged. We find a case of
controlling authority wherein the opinion appears to
take the opposite view of the law.       [Thrasher v.
Greene County, 105 Mo. 244.] We need not go into
what the rule is when the contract is unauthorized by
statute. Our statute empowers attorneys and clients
to make such arrangements at any stage of litigation.
To hold this statute warrants an attorney to make a
contract with his client about his fee, but will not
permit him to get judgment on the contract or derive
any benfit from it, except on an affirmative showing
that he did not procure it by fraud, would be a strange
interpretation and add new clauses to the statute. If
an attorney must prove this in the first instance, he
must allege it in declaring on the contract—a rule we
are unwilling to countenance. As the plaintiff ad-
mitted signing the contract, it was for him to prove
his averments regarding the unfair methods practiced
to induce him to do so. It follows from what has
been said that, as the contract was admitted, as it
was not void for illegality, and as there was no evi-
dence whatever adduced which tended to fasten fraud
on the defendant in connection with its execution, the
court below was justified in treating it as valid, and
as constituting the measure of the rights of the re-
spective parties.''

Upon the question discussed there is no distinc-
tion to be drawn between section 964 and section 965.
The former authorizes the attorney to make any kind
of a contract for a fee, whilst section 965 is a little
more limited. They both go to the right of the at-

249 Mo.—28

torney to contract. The reasoning of Judge GOODE applies equally to both sections.

Under our statutes the court *nisi* committed no error in admitting the contract in evidence. That such contract might be avoided by the defendant upon making a proper showing must be conceded, but mere proof of the relationship borne does not avoid it, nor shift the burden of proof. This because of the statute authorizing such contracts. Contracts of this kind stand upon their own plane and upon a level fixed by the statutory law, and what is here said does not change the rule as to contracts growing out of fiduciary relations in other cases.

In the trial *nisi* counsel for defendant seemed to agree with us. Discussing a question as to the order of introducing evidence, Mr. Pike of counsel for defendant said: "The burden is on us, if we don't prove that fact to make you sick you can have judgment for $25,000."

There is no evidence in this case as to what actually occurred between the parties when this contract was made. There is no proof of fraudulent or improper conduct upon the part of Pitt in the making of this contract, further than is indicated by the face of the contract, and the oral testimony as to the reasonableness of the fee fixed by the contract. Upon the latter the character of the evidence taken as a whole is not such as would have warranted the jury in saying that the contract should be ignored for fraud or other similar reasons.

The case involved $75,000 in property. It is urged that there was nothing in the case, owing to the previous decision of this court in Corby v. Corby, 85 Mo. 371. Suffice it to say that the issues involved were not the same, nor were the parties the same. It was not a case of *stare decisis*. Nor can we say that either Pitt or his client would have been justified in the conclusion that there was nothing to the case in which

the contract was made. The amount at stake is not questioned. The suit was instituted against Mrs. Forsee by a most able and reputable Attorney-General of this State. He was joined in the prosecution by three of the ablest and most reputable lawyers of the St. Joseph bar. Their petition was a formidable document, and it sought in all earnestness to divest Mrs. Forsee of $75,000 of her fortune. The suit was evidently not one to be passed over lightly.

So that we conclude that this second contention of the defendant should be ruled against her.

III. But even conceding that some of the theories of the law as announced by our paragraphs one and two of this opinion are wrong, yet under the instructions given and the evidence adduced this verdict should be sustained. There is ample evidence in the record upon which could be predicated a finding that the contract was fairly entered into by the parties. Such theory was fairly presented to the jury by modified instruction numbered two given for the plaintiffs, which instruction we have fairly set out in this opinion.

**Fair Contract.**

Not only so, but as further evidencing the theory of the trial court, the defendant asked instruction numbered two, in this language:

"The law does not require the defendant to charge and prove that Pitt practiced any fraud upon the defendant to induce her to enter into the contract read in evidence in order to make it void as against her. It is sufficient for defendant to prove that it was procured from her by Pitt while he was her attorney and confidential agent and was entrusted by her with the direction and control of all her business affairs, including the property which was affected by the Attorney-General's suit."

The court modified such instruction by adding thereto the following clause:

"And upon such proof the burden is cast upon the attorney to show by evidence that the contract is a fair and reasonable one and was understood by the client and voluntarily entered into by the client without undue influence of the attorney."

By this modification the burden was clearly cast upon plaintiff, if in fact it was not so cast by the plaintiff's instruction numbered two, mentioned above. In two other modified instructions for defendant the court likewise cast the burden, but we feel that this sufficiently presents the matter without further burdening this opinion. So that it can be safely said the trial court cast all legal burdens upon the plaintiff, and if there was substantial evidence upon which the jury could find that such burden was carried then the verdict was right. We have found that there was such evidence.

IV.    There are several other minor points made in the briefs for defendant going to questions of evidence and instructions.

These we have examined, but hardly think they are such as to merit further notice. Upon the hearing of this case we were rather impressed with the idea that the recovery in this case should have been upon the pure *quantum meruit* count of the petition, i. e., the third count rather than the second. We were also impressed that the court had erred in leaving the burden of proof as to the reasonableness of the contract upon defendant. But an examination of the authorities upon the first matter, and an examination of our statutes and the case law upon the other, has changed these impressions made by the oral argument.

The fee looks large, but the case considered from all its angles does not leave it looking so large. The amount involved has much to do in determining a fee.

Upon the whole we are of opinion that the judgment will have to be affirmed.

Let it be affirmed. *Faris, J.,* concurs; *Woodson, J.,* concurs in result and in part of the opinion in a separate opinion; *Brown, J.,* concurs in the first and third paragraphs of this opinion and the result; *Lamm, C. J., Bond* and *Walker, JJ.,* dissent, in an opinion by *Walker, J.*

## CONCURRING OPINION.

WOODSON, J.—I concur in all that my learned associate Judge GRAVES has said in this case, as to the evidence showing that the contract in controversy was fair and reasonable and was entered into without any fraud or undue influence on the part of Mr. Pitt. I also concur in the result reached by him. But I dissent as to that part of the opinion which holds that our statute has removed from attorneys Contract for the burden of showing that their contracts Services: Recovery. with their clients, after the relation of attorney and client has been established, were fair and reasonable and were free from fraud and undue influence on their part.

Judge WALKER has fully expressed my views of the law upon this branch of the case in the second paragraph of his dissenting opinion, in which I fully concur.

I am, however, unable to concur in the first paragraph thereof, for the reason that I think the common sense of the contract and what the parties thereto had in mind was, that Mr. Pitt's services in any event, if the contract was fully performed by him, should be not less than $25,000 and might be much more, if the evidence showed that the services were really worth more.

The latter part, he clearly had the right to waive, even though his services may have been worth $50,000, and could have sued for and recovered the $25,000, notwithstanding he had earned a much larger sum. Now, if that is what the parties had in mind, and evidently that was their intention, then by parity of reasoning it seems to me that if he, as previously stated, was to recover $25,000 in any event, then if for any legitimate reason he was prevented from fully performing the contract, then he certainly should be entitled to that part of the absolute fee he had absolutely earned, whether it was one-third, one-half, three-fourths or any other portion thereof.

Suppose he had performed all the services called for by the contract except as to some trivial matter, and had died, just as he did, and it had become necessary for Mrs. Forsee to have employed other counsel to perform that matter, which was, say, worth only $25, and she had done so and had paid it, would it be seriously contended that Mr. Pitt's administrator would not be legally entitled to collect the $25,000, less the $25, paid by her for said other counsel? I apprehend not; for the reason that was the amount the parties to the contract had agreed upon as the value of his services.

As an illustration, suppose the contract had fixed Mr. Pitt's fees absolutely at $25,000, no more, no less; also that the services he had agreed to perform were really worth $50,000; that after he had partially performed the contract, say fifty per cent of it, he discovered his error and had, for that reason, wilfully abandoned his contract, preferring to lose the $12,500 earned under the contract, than to perform the remaining service worth $37,500, and only receive therefor $25,000; and in consequence thereof, it became necessary for Mrs. Forsee to employ and she did employ other counsel, say John Jones, to complete the contract; that Jones availed himself of Mr. Pitt's work,

as was done in the case at bar; that after completing the services called for in Mr. Pitt's contract, Jones presented his bill to Mrs. Forsee for $37,500, the reasonable value of the services performed by him, and she had paid it; and thereupon she had sued Mr. Pitt for the $37,500, the amount she was forced to and did pay Jones, would it be seriously contended that Mr. Pitt or his administrator could not set off the $12,500, the value of the services performed by him, which was fifty per cent of the entire contract price, and utilized by said Jones, against the $37,500, which she had so paid Jones? I apprehend the answer would be in the negative, and if so, that would be prorating the work and value thereof according to the price of the entire work as fixed by the contract. Now, if the price fixed by the contract could be used as a corrected basis of prorating in the supposed case, why then could not the same thing be done in the case at bar?

I can see no difference in principle between the two cases.

Clearly such a rule could in no wise injure the client, and as a matter of fact, in the case at bar, Mrs. Forsee made several thousand dollars by the unfortunate death of Mr. Pitt, which occurred before he had fully completed the contract, yet she has received full value for the entire $25,000, which she agreed to pay therefor, in any event.

For these reasons I concur in the result of the majority opinion, as previously stated, and to paragraph two of Brother WALKER's dissenting opinion.

*Brown, J.,* concurs herein.

## DISSENTING OPINION.

WALKER, J.—I am unable to concur in the majority opinion. While the wisdom or utility of dissenting opinions is questionable, a mere declaratory dissent, unsupported by a reason therefor, is purely

nebulous, serving only to provoke conjecture. To avoid this attitude, I will state the reasons for my non-concurrence.

I.   The terms of the contract made by the defendant with the attorney so far as concerns the matter in issue is as follows:

"I hereby authorize James F. Pitt, Esquire, to represent me as counsel in the defense of the above entitled cause, and for his services as such I agree to pay him in any event a reasonable fee, and if the defense is entirely successful a fee of not less than $25,000."

This contract is the corner stone of plaintiff's case; correctly interpreted the rights of the parties may be readily determined thereunder; plain and unmistakable in its terms, an extended analysis of same is not necessary to ascertain its meaning.   Such a course would confuse rather than enlighten.

Contract for Services: Quantum Meruit.

While the contract is entire in regard to the subject-matter, namely, the employment of the attorney, the compensation to be paid therefor is divisible. First, as to the payment of a reasonable fee; and, second, not less than $25,000 if the defense was entirely successful.   Under the first provision a reasonable fee was to be the compensation upon the happening of any event which would, through no fault of the attorney, prevent him from conducting the defense to a successful termination; among the events likely to happen, within the reasonable contemplation of the parties, were:   (1) an unsuccessful defense, (2) the discharge of the attorney by the defendant pending the litigation, (3) the inability of the attorney to further defend the action, including his death.   Under the second provision, the measure of compensation is only applicable upon an entirely successful defense.   The

attorney died before this event occurred. His death eliminated the second provision, leaving a complete contract prescribing a reasonable compensation as the measure of the fee.

But suppose the attorney had not died and any one of the events had occurred which rendered it impossible for him to continue in the defense? An unsuccessful result would, by express terms, have limited the measure of the fee to the first provision of the contract; and by parity of reasoning, based on the evident purpose of the parties, and in accord with the canons of construction, the same rule is to be applied to measure the compensation upon the happening of any other event which rendered the attorney unable to continue in the defense. [Lewis v. Omaha St. Ry. Co., 114 N. W. (Neb.) 281; Johnston v. Bernalillo Co. Commrs., 78 Pac. (N. M.) 42.]

Any other construction of the contract, in my opinion, does violence to the language employed, which is unmistakable in its terms and is clearly expressive of the object and purpose of the parties.

What I have heretofore said in no way conflicts with the conclusion reached in the majority opinion in that the attorney was entitled to reasonable compensation for services rendered, and that his death does not preclude his personal representative from recovering for such services.

While the service of an attorney is purely personal in its nature (Lacher v. Gordon, 111 N. Y. Supp. 283; Bently v. Fidelity & Deposit Co., 69 Atl. [N. J.] 202), and is annulled by death (Corson v. Lewis, 109 N. W. [Neb.] 735), and his personal representative has no right to employ another to complete the service, he may sue on the contract of employment or on a *quantum meruit* for the services rendered by the deceased attorney. [Boyd v. Daily, 85 App. Div. (N. Y.) l. c. 587; Love v. Peel, 79 Ark. 366.]

But I do not agree in the conclusion of the majority that the $25,000 under the terms of this contract, may be taken as a basis for estimating the reasonable compensation. If construed as in the trial court and as approved in the majority opinion, the contract would read:

"I hereby authorize James F. Pitt to represent me as counsel in the defense of the above entitled cause and for his services as such I agree to pay him in any event a reasonable fee, and in determining such reasonable fee if the services are not completed, $25,000 is to be taken as the value of all services to be rendered by him; and if the defense is entirely successful a fee of not less than $25,000."

Thus amended, terms and conditions are incorporated into the contract certainly never contemplated by the parties; as I have shown, it is either a contract for a reasonable fee for partial performance, or a fee of not less than $25,000 if the suit through the instrumentality of the attorney, terminated successfully.

A reasonable compensation is such as will fairly compensate for the services rendered, taking into consideration the character and ability of the attorney, the importance of the cause, the labor performed and the results obtained. [Powell v. Foster's Estate, 71 Vt. 160; Steele v. Hammond, 136 App. Div. 667, 121 N. Y. Supp. 589.] The injecting into the instrument of any other element is in effect and in fact the making of another and different contract.

I am, therefore, of the opinion that the giving of instruction two by the trial court, which authorized the jury to take $25,000 as the value of all the services which Pitt was to perform as a basis for ascertaining the reasonable value of the services performed, was error.

II. The majority opinion announces the rule that an attorney in a suit against a client on a contract, when

a fiduciary relation is shown to exist, be-
**Attorney and Client:** fore or at the time the contract is made,
**Confidential** does not have the burden of proving that
**Relation: Contract.** the contract is fair and just and that he
took no undue advantage of the client.
I do not understand this to be the law.

An attorney primarily sustains a confidential or
trust relation to his clients, similar to that existing
between a trustee and *cestui que trust,* guardian and
ward, physician and patient, or principal and agent.
[Brock v. Barnes, 40 Barb. 521; White v. Whaley, 40
How. Pr. Rep. 1. c. 364; Boyle v. Read, 138 Ill. App.
153; Darlington's Estate, 147 Pa. St. 624; Greenfield's
Estate, 14 Pa. St. 489.]

However, before the relation begins, or át its in-
ception, attorneys in undertaking business for clients
may contract in reference to compensation without the
burden of proving fairness or freedom from fraud, on
the theory that they deal at arms' length with each
other (Fowler v. Callan, 102 N. Y. 1. c. 398; Boyd
v. Daily, 85 App. Div. [N. Y.] 581; Elmore v. John-
son, 143 Ill. 513, 36 Am. St. Rep. 401; White v. Tolli-
ver, 110 Ala. 300), which renders the contracts thus
made as valid as if between other persons not occupy-
ing a fiduciary relation, and who are, in all respects,
competent to contract with each other.   [Dockery v.
McLellan, 93 Wis. 381.]

But after a fiduciary relation between attorney
and client has begun, agreements between them re-
specting the former's fee for services rendered and
to be rendered will be zealously scrutinized and must
be supported by clear proof on the part of the attor-
ney that the amount agreed upon is fair and reasona-
ble.  [Dickinson v. Bradford, 59 Ala. 581, 31 Am. St.
Rep. 23; Shirk v. Neible, 156 Ind. 66; Thomas v. Tur-
ner, 87 Va. 1; Planters' Bank v. Hornberger, 4 Cold.
(Tenn.) 531; Jennings v. McConnel, 17 Ill. 148, 150;
Bolton v. Daily, 48 Iowa, 348; Hughes v. Zeigler, 69

Ill. 38; Marshall v. Dossett, 57 Ark. 93; Waterbury v. Laredo, 68 Tex. 565; Ryan Bros. v. Ashton, 42 Iowa, 365, 370.]

This is the general rule, and as has been tersely said by the Supreme Court of Illinois: " 'The reason for the doctrine is to be found in the nature of the relation which exists between attorney and client. That relation is one of confidence and gives the attorney great influence over the actions and interest of the client. In view of this confidential relation, transactions between attorney and client are often declared to be voidable, which would be held to be unobjectionable between other parties. The law is thus strict, "not so much on account of hardship in the particular case, as for the sake of preventing what might otherwise become a public mischief." ' " [Cassem v. Heustis, 201 Ill. 208.]

I do not understand that our statute has abrogated the doctrine above announced in regard to contracts between attorneys and clients; in so far as it applies to the contract under consideration, it is as follows:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. . . ." [Sec. 964, R. S. 1909.]

This statute was taken *in haec verba* from the statutes of New York.

Under the common law, barristers, advocates and counsel were not authorized to make contracts for compensation nor maintain actions for the reasonable value of their services. [Kennedy v. Broun, 13 C. B. (N. S.) 677, 9 Jur. (N. S.) 119, 7 L. T. Rep. (N. S.) 626; Swinfen v. Chelmsford, 1 F. & F. 619, 5 H. & N. 890.]

The purpose of the enactment of the New York statute was, as has been said by the Supreme Court of that State, in construing an earlier statute of like

effect, but of different phraseology, "to place the lawyer upon the same footing as other persons, free to make his engagements with his clients as they. should agree; and although extremely broad in language, it went no farther. It removed the restraint imposed by the statute of champerty and maintenance, permits contracts for services to be made between attorney and client before or on the creation of the professional relation, and payable out of the subject-matter of the litigation, or upon a division thereof, when recovered or otherwise, but in nowise affects the equity rule as to subsequent actions created or performed under the influence of that relation." [Mason v. Ring, 3 Abb. Appeals (N. Y.) 1., c. 219.]

In a later New York case, construing a statute employing the language of section 964, supra, the court said: "Thus we have a statute gradually progressing in one direction, which has required more than half a century for its development. It consists of only three sentences, but each has been the subject of one or more independent enactments intended to protect attorneys and enable them to collect pay for their services. The first establishes freedom of contract between attorney and client with reference to the compensation of the former." [Fischer-Hansen v. Railroad, 173 N. Y. 1. c. 498.]

In a still later New York case decided in 1910, in which an attorney had brought suit on a contract made with a client for a large contingent fee—the attorney being at the time of the making of the contract the confidential adviser of the client, the court, in construing the statute, said: "Plaintiff puts much reliance upon the language of section 66 of the Code of Civil Procedure (now section 474 of the judiciary law [Consol. Laws, c. 30]), which provides that an attorney's compensation is governed by agreement, 'which is not restrained by law,' which he understands to include a prohibition against its supervision in

equity. But that this language of the Throop Code was not intended to vary the meaning of the old Field Code of Procedure is shown by the revisers' own declaration. In appendix B to their report, containing a list of the sections in which the law is amended, they omit section 66 (Code of Remedial Justice [Throop's Ed. 1876], p. 516), thus relegating it to the class of redrafts 'whose sole object is to conform the syntax of the terms used to those of other portions of the bill, to prune down redundant expressions, or otherwise to attain greater simplicity and clearness without material change of the meanings.' [Id., p. 515.] The present words 'which is not restrained by law' replace a provision of the old Code (Code 1848, sec. 258; Code 1849, sec. 303) which repealed all then existing statutes regulating attorney's fees, together with 'all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor or counsel for his compensation.' . . . And the object of the codifiers was to give the attorney the same right of contract 'as in respect to every other professional person' (Rep. Code Comrs., 1848, pp. 204, 205). The jurisdiction of equity over persons in confidential relations stood untouched." [Ransom v. Ransom, 127 N. Y. Supp. l. c. 1033, 1034.]

It is evident, therefore, that the statute, as enacted in New York, was to establish freedom of contract between attorney and client, or, as was said in the cases above cited, to place them upon the same footing as other persons having business relations with each other, but in no way affecting the rule applicable when a fiduciary relation is shown to exist.

The Missouri statute being identical with that of New York and enacted for a like purpose, is to be construed as in the jurisdiction of its origin. [Skouten v. Wood, 57 Mo. 380; State ex rel. v. Miles, 210 Mo. 127, 146.]

I do not understand that the New York cases cited in the majority opinion (In the Matter of Fitz-simons, 174 N. Y. 1. c. 23; Werner v. Knowlton, 94 N. Y. Supp. 1. c. 1057, and Ransom v. Cutting, 98 N. Y. Supp. 1. c 284) announce a different doctrine, but, on the contrary, if read in the light of the history of the statute construed, they afford ample support for the conclusion here reached.

In an exhaustive review of these and other similar cases, in Ransom v. Ransom, 127 N. Y. Supp. 1. c. 1035, the Supreme Court of that State said: ''Upon reviewing all the authorities I do not find any that diminish the force of the ancient rules of chancery affecting contracts between persons in confidential relations.'' And as eminently appropriate to the facts in the case at bar, we add the following observation to be found in the same opinion: ''This plaintiff secured his contingent interest after he had already for a considerable time been the widow's confidential adviser and friend as well as counsel, and while the work for which he was seeking compensation was already progressing.''

If further stanchion be required to sustain the construction here given section 964, the venerable and salutary rule of interpreting statutes, announced over three hundred years ago in Haydon's case, 3 Coke's Rep. 7b, pp. 19 and 20, cited with approval in the Matter of Bomino's Estate, 83 Mo. 1. c. 441, and later learnedly discussed with commendation by LAMM, C. J., in State ex rel. v. McQuillin, 246 Mo. 534, may be appropriately quoted. It is to this effect: In determining the meaning and purpose of a law these elements are to be considered: first, the occasion and necessity of the law; second, the mischief felt; and, third, the object and remedy in view. Applying this gauge to the statute in question, we find that the occasion and necessity of the law was to give attorneys freedom of contract with clients. The mischief felt was the in-

justice arising from the application of the strict common law rule to contracts between attorneys and clients which savored in many instances of champerty and maintenance, giving them an odor of impropriety if it did not render them invalid. The object was to place attorneys upon a like plane with others entering into contractual obligations; and the remedy was to afford them a definite means of securing relief when such obligations had been entered into. That this right and remedy was given free from any purpose to abrogate the rule in regard to a fiduciary relation, is to my mind beyond question.

In reference to the Missouri cases cited in the majority opinion, it will be found that at the time of the rendition of the opinions in Thrasher v. Greene County, 87 Mo. 419, 105 Mo. 244, the statute under consideration was not in existence; but considered in the absence of the statute, it is apparent that no confidential relation existed and that the parties dealt at arms' length. Under all the facts in Beagles v. Robertson, 135 Mo. App. 306, the conclusion there reached as to the entire case is not incorrect, but in so far as the reasoning *obiter* repudiates the doctrine as to the burden of proof where a fiduciary relation is shown to exist before or at the making of a contract, it is, in my opinion, not the law.

I am, therefore, of the opinion that the Missouri statute has not abrogated the rule in regard to the burden of proof in a suit upon a contract between an attorney and a client where a fiduciary relation has been shown to exist before or at the time the contract was made.

For the foregoing reasons I dissent from the conclusions reached in the majority opinion.

*Lamm, C. J.,* and *Bond, J.,* concur; *Woodson* and *Brown, JJ.,* concur in paragraph two.