# WILLIAM B. THOMPSON et al., Respondents, v. E. C. STEARNS et al., Appellants.

### St. Louis Court of Appeals, May 8, 1917.

1. **PLEADING: Motion to Make Petition Specific: Waiver by Pleading Over.** The filing of an answer, after a motion to require a petition to be made more definite and certain has been overruled, is a waiver of the right to complain of the ruling, on appeal.

2. ————: **Demurrer Ore Tenus: Rules of Decision.** A demurrer *ore tenus* is not viewed in the same light as a formal demurrer, so that, although a petition is informal and states the cause of action defectively, nevertheless if it states facts sufficient to show a cause of action, or if a material matter is not alleged, but is necessarily implied from what is stated, an objection made at the trial to the introduction of any evidence should be overruled; it being necessary to take advantage of such defects by formal demurrer or motion.

3. ————: **Defects: Cure by Verdict.** If matter material to plaintiff's cause of action is not expressly stated in the petition but is necessarily implied, the defect is cured by a verdict for plaintiff.

4. **ATTORNEY AND CLIENT: Compensation for Services: Sufficiency of Petition After Verdict.** In an action by a firm of attorneys, against a client, for compensation for legal services performed, pursuant to a contract of employment, the petition *held* to sufficiently imply that plaintiffs performed their part of the contract, as against an objection first made after a verdict for plaintiffs.

5. ————: ————: **Contract for Compensation: Burden of Proof.** Unless otherwise expressly provided by statute, the burden of proving that a contract entered into after the employment has commenced and the relation of attorney and client exists, is a fair and just contract and that the attorney took no unfair advantage of the client, is upon the attorney, and he must show that he has not contracted for a greater benefit than his services are reasonably worth; with reference to his standing and ability, the character of the controversy, the skill and labor required, the responsibility imposed, the amount involved, and the results attained; and Sec. 964, R. S. 1909, which provides that the compensation of an attorney for his services is governed by agreement, express or implied, which is not restrained by law, does not abrogate this common law rule—following Morton v. Forsee, 249 Mo. 409.

6. ————: ————: ————: ————. In an action by a firm of attorneys, against a client, for compensation for legal services per-

formed, pursuant to an express contract for the payment of a stipulated amount, made after the relation of attorney and client had commenced, *held* that, in view of the fact that the contract. was made after the creation of the confidential relationship, the burden was upon plaintiffs to show that the services performed were reasonably worth the stipulated amount—Sec. 965, R. S. 1909, authorizing the making of contracts for a portion or percentage of the recovery, not being applicable, since the contract in question provided for the payment of a stipulated amount; and hence it is *held* that it was reversible error to reject evidence offered by defendants which tended to show that the services were not worth such stipulated amount.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED.

*John A. Blevins* and *Lon O. Hocker* for appellants.

(1) The petition did not state a cause of action, and the objection of the defendants to the introduction of evidence should have been sustained. There is no allegation in the petition that plaintiffs performed their part of the contract sued on. 31 Cyc, page 107; 9 Cyc, 719; Bayse v. Ambrose, 32 Mo. 484; Beckman v. Ins. Co., 49 Mo. App. 604. (2) The defendants' motion in arrest of judgment should have been sustained. (1) The petition did not state a cause of action. (2) Upon the whole record plaintiffs were not entitled to recover. See authorities under point I. (3) The court erred in overruling defendants' motions to make the petition more definite and certain. Sec. 1815, R. S. 1909; Davis v. Railroad, 126 Mo. 78. (4) The evidence of C. B. Williams, Esq., offered by defendants to show the value of plaintiffs' services, should have been admitted. Its exclusion by the court was error. Carleton v. Dustin, 9 Ohio 51, 10 Cent. L. B. 294; Thomas v. Turner, 87 Va. 1. (5) Under the pleadings and the evidence, the court should have declared, as a matter of law, that the plaintiffs had abandoned the alleged contract, and for that reason could not recover. Morrow v. Pike Co., 189 Mo. 610; Henry v.

Bassett, 75 Mo. 89; White v. Wright, 16 Mo. App. 551. (6) The burden was upon plaintiffs to show that the alleged contract was reasonable and just and that the amount mentioned therein was not in excess of the reasonable value of their services. In the absence of such showing, plaintiffs cannot recover. 4 Cyc, 960; White v. Tolliver, 110 Ala. 300; Haight v. Moore, 37 N. Y. Sup. Ct. 161; Carleton v. Dustin, 9 Ohio 51, Cent. L. B. 294; Rose v. Mynatt, 7 Yerg. Tenn. 30; Thomas v. Turner, 87 Va. 1, 12; Brock v. Barnes, 40 Barb. 521; Nusan v. Payne, 2 Ves. 200; Dickson v. Bradford, 59 Ala. 581. Waterbury v. City, 68 Tex. 565; Bolton v. Daily, 48 Iowa, 348; State v. Standard Oil Co., 194 Mo., 124, 143; Barrett v. Ball, 101 Mo. App. 288; Morrow v. Pike Co., 189 Mo. 610; Lecote v. Sallee, 3 Port (Ala.) 115; Weeks on Attys. at Law, 276. (7) Plaintiffs are not entitled under the law to greater compensation for their services than was at first, either expressly or impliedly agreed upon. The agreement sued upon being made after the fiduciary relation had commenced, and while it was still in existence, cannot be enforced beyond a reasonable compensation for the services rendered. See authorities cited under point 6. (8) Upon the whole record the judgment below should be reversed. The court was without jurisdiction in the premises and could not under the pleadings and the evidence render a decree for plaintiffs and declare the same alien upon the property described in the petition. The defendants' motion in arrest of judgment should therefore have been sustained. Shinn on Garnishment, 906; Geist v. City of St. Louis, 156 Mo. 643; Martin et al. v. Michael et al., 23 Mo. 50; Bank of Odessa v. Barnett et al., 98 Mo. App. 477; Paddock-Hawley Iron Co. v. McDonald et al., 61 Mo. App. 559; Pendleton v. Perkins, 49 Mo. 569; 20 Cyc. 993; Coleman v. The American Fire Ins. Co., 74 Mo. App. 663; Johnson v. Geneva Pub. Co., 122 Mo. 102; Potter v. The Conqueror Trust Co., 95 Mo. 113; Birtwhistle v. Woodward, 95 Mo. 113; Heaton v. Dickson, 153 Mo. App. 312.

*Albert D. Nortoni* for respondents.

BECKER, J.—This is a suit for attorney's fees alleged to be due plaintiffs from the defendant, E. G. Stearns, and for a lien on Stearns' interest in property held by the defendant Garneau, as trustee. On a hearing of the cause judgment and decree were entered by the court in favor of the plaintiffs and against the defendant Stearns in the sum of $3153, which said amount was by said decree declared a lien in favor of plaintiffs on the real estate described in plaintiffs' petition. From this judgment and decree defendants and plaintiffs appeal. We herein take up defendants' appeal No. 14676.

Plaintiffs commenced their suit on the 8th day of December, 1913. The petition is lengthy and we do not find it necessary to set it out. The answer of each of the defendants was a general denial.

The testimony in the case shows that plaintiffs, father and son, were a copartnership in the practice of law, and that the defendant E. G. Stearns was a nonresident of the State of Missouri, as was the defendant W. G. Rath, a son-in-law of said Stearns. Defendant Burritt was a resident of St. Louis. That said Stearns, Rath and Burritt were stockholders in a corporation known as the Banner Rubber Company, of which Burritt was in active charge and control. Stearns, having become dissatisfied with the manner in which the. Banner corporation was being managed by Burritt, and desirous of taking steps to protect his interest in said company,— Stearns' investment in the company aggregating from sixty to one-hundred thousand dollars during the period over which the services of plaintiffs extended,—sought the advise of the plaintiffs as to what, in their opinion, defendant should do to get his money out of the said company. It appears that throughout the employment Mr. Ford W. Thompson, the junior member of plaintiffs' firm, was in active charge of the business for defendant Stearns. Mr. Ford W. Thompson made arrangements for a consultation between defendants Burritt and Stearns which resulted in said Thompson drawing up

some sort of a contract between the said parties, some time in August, 1912. Along in December, of that same year, Stearns, having become dissatisfied with the working out of the contract theretofore made, was advised by Ford Thompson, so Stearns testified, that it would be necessary to file a suit against Burritt, but before doing so it would be necessary to have an accountant go over the books of the said corporation.

About the same time, in December, 1912, the defendant Stearns testified he had received a bill from the plaintiffs for legal services amounting to $500, and that a short time after receiving the bill, he, in company with a man by the name of Bentley, went to the offices of plaintiffs and during the conference the following conversation took place:

"Mr. Thompson, what are you going to charge me to file this bill and protect my interests, follow through and get my money out of the Banner Rubber Company?" He said to me: 'Mr. Stearns my father is not here; he generally fixes the fees, but in his absence I will make the fee $1000. This bill which I have rendered of $500 I am going to make that void and give you credit for whatever you have a mind to pay me now as a retainer. And I paid him about that date $200 on the proposition he made. me for the sum of $1000."

A little later, and through the advice of the plaintiffs, a trusteeship was arranged for between the defendants Stearns, Rath and Burritt, whereby the entire properties of the Banner Rubber Company were conveyed to Henry C. Garneau as trustee, with certain powers to manage, etc., and with authority to sell the entire plant at public auction to the highest bidder, on the 14th day of December, 1913, unless said date of sale was postponed by agreement of all the parties in interest. This trust agreement was prepared by the plaintiffs and the selection of Garneau as trustee was made by plaintiffs.

After the trustee's agreement referred to had been drawn up, the defendant Stearns went to the office of the plaintiffs to say good-bye to them, and according to his testimony was told by Mr. Ford Thompson that his fa-

ther, Mr. William B. Thompson, wished to speak to him, and that thereupon he went into the office of the said William B. Thompson, who suggested that they come to some agreement as to the sum defendant was to pay them as attorneys' fees; that after some discussion, the details of which it is not necessary to set out, Mr. Thompson said he would write defendant a letter embodying their resultant understanding. And that accordingly defendant thereafter received a letter from the Thompsons, while at his home in Chicago.

Mr. William B. Thompson did not testify, but Mr. Ford Thompson was a witness and testified. He absolutely denied that he had agreed to charge but $1000 for the services, and that no such conversation had taken place; that the agreement as set out in the letter spoken of as having been sent to the defendant Stearns, as expressing the agreement for compensation for the services rendered and to be rendered, was in point of fact dictated in the presence of said Stearns to Miss Sophia Luessler, stenographer and clerk for the palintiff firm, and read by the said Miss Luessler from her notes to the said Stearns, who refused to wait for the matter to be written out in full, desiring to catch a train returning to his home in Chicago, and requested that the letter be forwarded him there. Mr. Ford Thompson is corroborated by the testimony of the said Miss Luessler as to the matters relating to the dictating of the letter.

The letter referred to is as follows:

"St. Louis, March 15th, 1913.

E. G. Stearns, Esq.,

Jackson Blvd. and Market St.,

Chicago, Illinois.

Dear Sir:—

In accordance with the verbal agreement this day had with you, with reference to our fees for services rendered, and to be rendered, in the matter of the Banner Rubber Company, we write you this letter of confirmation.

For all services rendered to date, and to be rendered upon the final distribution of your interest after sale of

the property by the trustee, our bill is the amount of five thousand dollars ($5,000); however, in the event that the property sells for less than $150,000 we agree to deduct from our fee the sum of one thousand dollars ($1,000).

To date we have received, on account of this bill, the sum of $200, a balance of $4,800 being due under the above terms, you to pay $800 forthwith, and the remaining $3,000 to be paid at your convenience on or before the date at which the trustee, Henry C. Garneau, sells the real estate, buildings, machinery and equipment, and the additional $1,000 to be paid in the event that at said sale the property brings $150,000; but in the event the property sells for less than $150,000, the additional $1,000 is not to be paid; it being our understanding that the full charge shall be $4,000 if the property brings less than $150,000, and in the event that it brings as much as $150,000 then an additional sum of $1,000 shall be paid, making the total amount $5,000.

Yours truly,

W. B. and FORD W. THOMPSON.

Paid, Mar. 18—13—800.''

In reply thereto the defendant Stearns sent a letter to the plaintiffs, in which we find the following paragraph:

"Chicago, March 18, 1913.

W. B. & Ford W. Thompson, 510 Merchants-Laclede Bldg.,

St. Louis, Mo.

Gentlemen:—Referring to your letter of March 15, the same defines my understanding of your charge, except that the term for services rendered and to be rendered in the matter of the Banner Rubber Company includes your attention respecting the affair from my standpoint up to the conclusion of the sale of my interest therein. . . . . . . . . . . . ''

And defendant Stearns did, in conformity with the letter, send plaintiffs $800.

It appears that some time after Garneau had taken charge of the properties of the Banner Rubber Company

as trustee, the defendant Stearns became dissatisfied with Garneau's management thereof and became convinced that said Garneau was not treating him upon the same basis as he was the defendant Burritt, but that Garneau was in point of fact conniving in some manner with one Wagner, who was retained in the employ of the Banner Rubber Company under said Gareau trustee, to take advantage of his position as trustee, and endeavor, at such time when the properties would be sold at auction, to buy same in for himself. Stearns reported his feeling regarding this matter to the Thompsons and insisted that steps be taken to remove Garneau as trustee. It appears that a meeting was had in Chicago in the office of the attorneys who represented Stearns in Chicago, at which meeting Mr. Ford Thompson was present, and a bill was dictated which it was intended should be filed in the United States Court at St. Louis, asking the removal of Garneau as trustee. Mr. Ford Thompson left before the bill was written out ready for signatures, and later refused to sign the bill as attorney for defendant Stearns, and gave as his ground, that the defendant Stearns did not have the requisite proof to substantiate the allegations set forth in the bill. An endeavor had been made by Ford Thompson (at the request and suggestion of William B. Thompson), in a personal letter to the trustee Garneau, to have Garneau resign as trustee, in order to save Mr. Ford Thompson the embarrassment of the position and to relieve the situation. This Mr. Garneau refused to do. The record shows that Garneau had been appointed trustee at the instance and at the suggestion of the Thompsons, and that the said Garneau and Ford Thompson were close personal friends.

After Thompson refused to sign the bill asking for the removal of Garneau as trustee, the defendant Stearns employed other counsel in St. Louis, who. together with his Chicago counsel, prepared a bill along similar lines, but added thereto various additional assignments or grounds for the removal of Garneau as trustee, and filed same in the circuit court of the city of St. Louis. This suit, upon a hearing, was dismissed and

an appeal was thereupon taken by the defendant Stearns. While the case was pending on appeal the differences between the defendant Stearns and Burritt were compromised and the appeal pending in the Supreme Court dismissed. In this compromise the total value of all the properties of the Banner Rubber Company was taken at $67,500. By reason of the said compromise no sale was in fact ever made of the properties by Garneau as trustee.

1. The first assignment of error is that the trial court erred in overruling a motion of the defendant Stearns to require plaintiffs to make their petition more definite and certain. The ruling of the trial court on the motion to make more definite and certain will not be reviewed here, in that the defendants subsequently filed an answer to plaintiffs' petition and thereby waived their right to further complain in respect to that matter. [Ewing v. Vernon County, 216 Mo. 681, 116 S. W. 518; White v. Railroad Co., 202 Mo. 539, 101 S. W. 14.]

2. The defendants next complain of the action of the trial court, at the time of the trial, in overruling their objection to the introduction of any evidence under the petition, on the ground that the petition did not state facts sufficient to constitute a cause of action, in that there is no allegation in the petition that plaintiffs performed their part of the contract sued on.

A demurrer *ore tenus* is not viewed in the same light as a formal demurrer. [Young v. Shickle Iron Co., 103 Mo. 324, 15 S. W. 771.] Though a petition is informal and the cause of action is defectively stated, still, if it states sufficient facts to show a cause of action, the objection made at the trial to the introduction of any evidence should be overruled. [Donaldson v. Butler County, 98 Mo. 163, 11 S. W. 572.] Also, if a matter material to the plaintiffs' cause of action is not expressly averred in the petition, but is necessarily implied in what is stated therein, the objection thereto must be taken by demurrer or motion; such objection cannot be made at the trial by an objection to the evidence, and is cured by a verdict. [Lycett v. Wolff, 45 Mo. App. 489; Thomasson v.

Ins. Co., 217 Mo. 485, 116 S. W. 1092; Finer v. Nichols, 175 Mo. App. 525, 157 S. W. 1023; Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; Murphy v. Ins. Co., 70 Mo. App. 78; Malone v. Fidelity Co., 71 Mo. App. 1.]

In the case of Peoples Bank of New Orleans v. Scalzo, 127 Mo. 164, l. c. 189, 29 S. W. 1032, Judge GANTT, speaking for the court said:

"It does not follow that because a petition is defective, and subject to a general demurrer, that it would be insufficient to sustain a verdict. On the contrary, the well settled rule at common law and under our code is, that, if a material matter be not expressly averred in the petition, but the same is necessarily implied from what is stated in the context, the defect is cured after verdict, the doctrine resting on the presumption that plaintiff proved on the trial the facts imperfectly alleged, the existence of which was essential to his recovery. [Rushton v. Aspinwall, 1 Smith's Leading Cases (4 Am. Ed.), 694, notes 654, top page; 2 Tidd's Practice. 919; Shaler v. Van Wormer, 33 Mo. 366; McDermott v. Class, 104 Mo. 14, 15 S. W. 995; Bliss on Code Pleading (3 Ed.), sec. 438; Lynch v. Railroad, 111 Mo. 604, 19 S. W. 1114; Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; R. S. Mo. 1889, sec. 2113, clauses 8 and 9.]"

We have not thought it necessary to set forth the plaintiffs' petition at length inasmuch as the cause will be reversed and remanded upon other grounds. We hold that the material matter complained of as not being expressly averred in the petition is sufficiently implied by what is stated in the context of the petition, when taken as a whole, to cure the defect after verdict. The question of the sufficiency of the petition upon formal demurrer is not before us. Before a retrial of the cause the plaintiffs may amend if so advised.

3. The next question before us is whether the burden rests upon plaintiffs to prove that the amount agreed upon as compensation for their services was the reasonable value of such services.

It has always been conceded that an attorney, before he undertakes the business of anyone seeking to em-

ploy him, may contract with reference to his services, because no confidential relation then exists, and the parties deal with each other at arm's length. The same is true in regard to dealings which take place after the relation of attorney and client has been dissolved. But the law watches with unusual jealousy over all transactions between the parties, which occur while the confidential relation exists.

In the case under consideration, unquestionably the relation of attorney and client existed at the time the contract in question was made; in fact, the greater part of the services had already been rendered by the plaintiffs to the defendant Stearns prior to the time the contract sued on was entered into. The letter written by plaintiffs to defendant, and relied upon as expressing the agreement between the parties, itself states so in express terms.

The general rule under such circumstances is that the burden of establishing the due execution of a fair and equitable contract between an attorney and client is upon the party seeking the benefits of the contract. This rule is universally held to apply to cases where the relationship of attorney and client already exists at the time the contract is made, and applies to those cases in which the agreement stipulates the compensation for services already rendered and to be rendered. Courts which uphold this doctrine enforce the rule that the burden is laid upon the attorney in such cases to show that the contract with his client for compensation for services, was not only fair, but that the client acted freely and understandingly, and that the attorney had not overreached his client nor had taken advantage of him by fraud. [Dixon v. Bradford, 59 Ala. 581; French v. Cunningham, 149 Ind. 632; Waterbury v. City, 68 Tex. 565; Whitehead v. Kennedy, 69 N. Y. l. c. 466; Carleton v. Dustin, 9 Ohio Dec. 51; Burnham v. Heselton, 82 Me. l. c. 500.]

In some jurisdictions the rule is even more drastic than stated above. In Thomas v. Turner, 87 Vir. 1, l. c. 12, we find the court lays down the rule that all dealings between attorneys and clients for the benefit of the at-

torney, are not only regarded with jealousy and closely scrutinized, but they are presumably invalid on the ground of constructive fraud, and that presumption can be overcome only by the·clearest and most satisfactory evidence, and states that the rule is founded on public policy and operates independently of any ingredient of actual fraud or of the age or capacity of the client, being intended as a protection to the client against the strong influence to which the confidential relationship naturally gives rise.

In Whitehead v. Kennedy, supra, l. c. 466, the court says:

"The plaintiff on the trial assumed the burden of proving that the agreement of October 25, 1865, was just and fair, having in view the general principle that an attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him. This general principle is firmly established, and universally recognized."

So in French v. Cunningham, supra, l. c. 656, we find this language:

"Such contracts, however, if invalid, are only presumptively so, and in such case the rule is that the burden of proof is upon the attorney to show the fairness of the transaction, and that the compensation provided for in such subsequent agreement does not exceed a fair and reasonable remuneration for the services which have been rendered, or which it is his duty to render."

Again in Burnham. v. Heselton, supra, l. c. 500, the court says:

"When, however, the parties are not upon an equal footing, each acting for himself, but some relation of trust or confidence exists between them, touching the subject-matter of the contract, the law is not so considerate or trustful. Where such relations exist, it views

the transaction with caution, if not with suspicion. In such cases, it will not assume in favor of the agent, or fiduciary, that the contract was fairly made, and that there was no abuse of confidence. It waits for such party to satisfy it affirmatively,—to affirmatively show that there was in fact no abuse of confidence,—that the contract was in fact fairly made,—that the other party was in truth made acquainted with all the material facts and reasons known to the fiduciary. The very making of the contract is incongruous,—prima-facie inconsistent, with the fiduciary relation. The transaction may be valid, but there is no presumption in its favor. The presumption is of invalidity, which can only be overcome, if at all, by clear evidence of good faith, full knowledge, and of independent consent and action.''

Courts of equity ought to scan with a critical eye all dealings between clients and attorneys, and particularly so with reference to that class of cases where a contract for the compensation is entered into between the attorney and client after the employment has already commenced, and the relation of attorney and client exists. In all such contracts, unless expressly otherwise provided by statute, the burden of proving that the contract was fair and just, and that he took no unfair advantage of the client, is upon the attorney, and he must show that he has not contracted for a greater benefit than his services are reasonably worth with reference to the character of the controversy, the skill and labor required, the responsibility imposed, the amount involved, the standing and ability of the attorney, together with the results attained. [Morton v. Forsee, 249 Mo. 409, 155 S. W. 765.]

But it is seriously contended, by counsel for plaintiffs, that section 964, Revised Statutes of Missouri, 1909, exempts the contract in the instant case from the general rule of law expressed above. Counsel have evidently overlooked the recent case of Morton v. Forsee, supra, l. c. 447-448, where it is said, with special reference to said section 964, that,

"Applying this gauge to the statute in question, we find that the occasion and necessity of the law was to give attorneys freedom of contract with clients. The mischief felt was the injustice arising from the application of the strict common-law rule to contracts between attorneys and clients which savored in many instances of champerty and maintenance, giving them an odor of impropriety if it did not render them invalid. The object was to place attorneys upon a like plane with others entering into contractual obligations; and the remedy was to afford them a definite means of securing relief when such obligations had been entered into. That this right and remedy was given free from any purpose to abrogate the rule in regard to a fiduciary relation, is to my mind beyond question. I am therefore of the opinion that the Missouri statute has not abrogated the rule in regard to the burden of proof in a suit upon a contract between an attorney and a client, where a fiduciary relation has been shown to exist before, or at the time the contract was made."

The contract of employment in the instant case is not one "for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action," and therefore does not come within the purview of section 965, Revised Statutes of Missouri, 1909, which applies to that class of cases only.

The court below evidently tried the case in the belief that the burden of proof was not upon plaintiffs regarding the matters set out above. In fact the court rejected the offer of testimony on the part of defendants, to show that the value of the services was in fact far less than that set out in the agreement sued on. This was reversible error.

The judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Allen, J.,* concur.