# AUGUST BARTHELS, Plaintiff, W. B. and FORD W. THOMPSON, Respondents, v. WILLIAM L. GARRELS, Appellant.

**St. Louis Court of Appeals. Opinion Filed December 30, 1920.**

1. **ATTORNEY AND CLIENT: Contingent Fees: Fiduciary Relationship: Attorney Must Show Fairness of Contingent Fee Contract.** Where the evidence discloses that at the time a contract for a contingent fee was entered into, the fiduciary relation of attorney and client then existed, the burden of proof was upon the attorney to show that there was a contract and that it was fair and just, and no unfair advantage taken of the client in its procurement, and that the agreed fee was a reasonable one.

2. **————: ————: ————: ————: Evidence: Sufficiency.** Testimony of the client that the arrangement or understanding was that the attorneys were to have one-third of the amount recovered and expressed himself as being satisfied with that arrangement, *held*, sufficient to warrant the court in finding that the contract of employment was fairly entered into, that no undue advantage was taken of the client, and that the services were reasonably worth the contingent fee agreed upon.

3. **APPELLATE PRACTICE: Setting Aside Satisfaction of Judgment to Amount of Attorney's Lien: Finding of Trial Court Supported by Evidence Conclusive.** Where the finding of a trial court, setting aside the satisfaction of its judgment to the amount of attorney's lien, is supported by ample evidence, the appellate court cannot disturb its judgment.

4. **ATTORNEY AND CLIENT: Contingent Fees: Liens: Filing of Suit Dispenses With Notice: Lien Attaches to Cause of Action and Judgment Thereon.** By the institution of the suit for plaintiff against defendant, and in which the attorneys appeared as the attorneys of record for plaintiff, a notice of the existence and terms of a contract of employment is not required to be served by the attorneys having such contract upon defendant in order to have and maintain a lien under section 964, Revised Statutes 1909, the lien therefore attached to plaintiff's cause of action, and to the judgment thereon, immediately upon its rendition.

5. ———: ———: ———: Discharge of Attorneys: Remedies. Where attorneys having a contingent contract, were summarily discharged by their clent, they had the option either to treat the contract as rescinded and sue for the reasonable value of their services, or treat the cause of action of the cient as liquidated by its reduction to judgment.

6. ———: ———: ———: Judgments: Appeal Without Bond: Lien Not Superseded. The lien of plaintiff's attorneys for the amount of their contingent fee on the judgment rendered, was not superseded by the defendant's appeal where the appeal was without bond.

7. ———: ———: ———: ———: Dismissal of Appeal: Judgment Impressed With Lien in Favor of Attorneys. The effect of the action of the Supreme Court in dismissing the appeal and not ingrafting on the cause a special proceeding of trying the issues of fact relative to setting aside the release of the judgment, made after appeal and in that court, and enforcing the attorney's lien by awarding execution, was to leave the judgment impressed with the lien in favor of the attorneys.

8. ———: ———: ———: ———: Procedure to Enforce Lien: Motion to Set Aside Satisfaction of Judgment and Award Execution Proper. Where both parties treated a document which was filed in term time as satisfying a judgment, a motion filed by attorneys claiming a lien thereon filed at the same term, to set aside the entry of satisfaction and to award execution to the extent of their lien, was a proper method of procedure.

9. ———: ———: ———: ———: Client Cannot Throw Away Lien. Although attorneys had a lien on a judgment, they did not thereby deprive the client of all control over the litigation; on the other hand, the lien of the attorneys could not be thrown or frittered away by their client, because their lien was upon the judgment and would not follow further, unless there were some proceeds of the judgment, in which event the lien would go from the judgment to the proceeds thereof, provided there was no fraud or collusion in fixing the amount of the proceeds.

10. ———: ———: ———: ———: Setting Aside Judgment: Evidence: Sufficiency. Where a client, who had entered into a contingent fee contract agreeing to give his attorneys one-third of the amount recovered, summarily discharged such attorneys, and thereafter filed satisfaction of the judgment, for reasons stated, thereby not only giving away his rights in such judgment that would and did become final, but likewise giving away the lien of his attorneys, a gift manifestly contrary to the intent of the Attorney's Lien Act, such satisfaction willnot be upheld, and the action of the

trial court in setting aside the satisfaction of the judgment, as to the amount of the attorney's fees agreed upon, and directing execution therefor, was right and proper.

11. ———: ———: ———: ———: **Settling Judgment for Less Than Face Value: Burden of Proof.** In a proceeding to set aside the satisfaction of a judgment to the amount of the lien claimed thereon by the attorneys for the plaintiff, where the plaintiff had entered satisfaction of the judgment, the burden was upon him of justifying his action in settling the judgment for less than its face. ·

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Karl Kimmel,* Judge.

AFFIRMED.

*T. Percy Carr* for appellant.

(1)   The evidence offered by movements at the hearing below was wholly insufficient to sustain the burden of proof placed upon them in this case. Thompson v. Stearns, 197 Mo. App. 354-356, 195 S. W. 45-46.   (2) Where an attorney is employed on a contingent fee consisting of a percentage of the amount recovered, and the client compromises the case, the amount for which the case is settled is the basis on which the attorney's percentage is to be computed. Curtis v. Metropolitan Street R. Co., 118 Mo. App. 341, 94 S. W. 762; s. c., on second appeal, 125 Mo. App. 369, 102 S. W. 62; Wait v. Atchison, T. & S. F. R. Co., 204 Mo. 491, 103 S. W. 60; Boyle v. Metropolitan Street R. Co., 134 Mo. App. 71, 114 S. W. 558; Boyd v. G. W. Chase & Son Mercantile Co., 135 Mo. App. 115, 115 S. W. 1052; Whitwell v. Aurora, 139 Mo. App. 597, 123 S. W. 1045; Hurr v. Metropolitan Street R. Co., 141 Mo. App. 217, 124 S. W. 1057; United R. Co. v. O'Connor, 153 Mo. App. 128, 132 S. W. 262; Stephens v. Metropolitan Street R. Co., 157 Mo. App. 656, 138 S. W. 904; Belch v. Schott, 171 Mo. App. 357, 157 S. W. 658; Whitecotton v. St. Louis & H. R. Co., 250 Mo. 624, 157 S. W. 776; McCall v. Atchley, 256 Mo. 39, 164 S. W. 593; Gillespie v. American Car & Foundry Co.,—Mo.

App.—,194 S. W. 1064; Mytton v. New York, C. & St. L. R. Co.,—Mo. App.—,198 S. W. 189.

*W. B. & Ford W. Thompson Pro Se.*

BARNES, C.—This is an appeal taken from an order of the circuit court setting aside the satisfaction of its judgment to the amount of the lien claimed thereon by the attorneys for the plaintiff.

Messrs. W. B. and Ford W. Thompson were attorney for August Barthels, plaintiff in a suit for libel instituted September 14, 1911, against W. L. Garrels, defendant. The trial resulted in a verdict and judgment rendered on April 23, 1913, for plaintiff, in the sum of nine thousand dollars, sixty-five hundred dollars being compensatory, and twenty-five hundred dollars exemplary or punitive damages. Mr. T. Percy Carr represented defendant therein. Motions for new trial and in arrest of judgment were duly filed, overruled, and an appeal taken to the supreme court at the June term, 1913.

At the time of the institution of the suit Messrs. Thompson were attorneys for one W. A. Buddecke, a friend of Mr. Barthels in a libel suit against W. L. Garrels, and also were attorneys for the said Barthels in other matters. Both libel suits grew out of a pamphlet issued by defendant Garrels.

Within three years from the rendition of judgment in the Barthel's case, Messrs. Thompson caused to be sued out of a writ of *scire facias,* and thereupon judgment of revivor was rendered by the court on September 27, 1916.

The case of Barthels against Garrels was docketed for hearing in the Supreme Court on the 17th day of October, 1916. On August 25, 1916, defendant submitted to the Messrs. Thompson a proposed bill of exceptions in the case, some six hundred pages, which was examined within the three day period allowed by the rule of court and written objections thereto prepared, and a copy of the objections served upon Mr. Carr's firm.

. The bill of exceptions was presented to Circuit Judge Anderson and received his approval and was filed in the case, although the case had been tried before Judge Wilson A. Taylor, who was not then in the city. Messrs. Thompson then filed a motion to set aside the order of approval of the bill of exceptions made by Judge Anderson, which motion was never passed upon.

Messrs. Thompson were served with abstract and brief on the 18th day of September, 1916, and immediately wrote their client Barthels, requesting him to come to their office; they also phoned his residence, and visited his residence, in an effort to get in touch with him, but were unsuccessful. In the meantime they prepared an additional abstract of the record, and a brief, causing the same to be printed and served on the 7th day of October, 1916, on Mr. Carr, attorney for defendant, and sent the requisite number of copies to the clerk of the Supreme Court for filing.

On October 7th, after having served defendant's attorneys with additional abstract and brief, Messrs. Thompson received a letter from their client Barthels, dated October 6, 1916, reading:—

"Gentlemen:—

You have been representing me in the cases of Aug. Barthels v. W. L. Garrels and in the case of the First Nat. Bank of Las Vegas, N. M. v. Franklin Bank, and others, both the above cases now in the Mo. Supreme Court, also you represent me in the case of Aug. Barthels v. Franklin Bank and others being case No. 60302 Circuit Court of St. Louis.

I have determined to dispose of your services in all the cases mentioned and in any other matters in which you may assume to represent me. You are directed to withdraw forthwith as attorneys in all suits mentioned I do not desire any further communications with you and will repudiate any actions you may take hereafter. I intend to manage my own matters and when necessary will engage other counsel.

Yours truly,

(signed)       AUG. BARTHELS."

The reason for the writing of this letter and the circumstances under which it was written, are testified to by plaintiff Barthels, to be: that he held a note against Buddecke which would be outlawed in May, 1916, and had requested the Messrs. Thompson to act for him in getting a settlement or payment of the note, which they declined to do because both Barthels and Buddecke were their clients.

Suit was instituted on the note against Buddecke in Washington County, Missouri, in May, 1916, and judgment for something like five thousand dollars was obtained by Barthels against Buddecke. The reason for the suit being instituted in Washington County was because it had appeared from some matters pertaining to litigation in which Buddecke had been interested, that Washington County was his home, but when this suit was instituted by Barthels against Buddecke, his residence in Washington County appears to have been denied, so that it became a question of serious import in that case to establish Buddecke's residence in Washngton County in order to give the court before whom the case was pending jurisdiction. In pursuit of evidence to establish Buddecke's residence in Washington County, Barthels endeavored to see Garrels and made several trips to the Franklin Bank in an effort to see him, being finally advised that he might see Garrels at the office of his attorney Mr. Carr. Barthels in company with his attorney from Washington County, Mr. Cooper, met Mr. Garrels at Mr. Carr's office. The suit in Washington County resulted in judgment for Mr. Barthels and against Mr. Buddecke for the amount sued for. Mr. Barthels testified that it was about that time that he told Mr. Garrels that he did not want to have anything more to do with the litigation; that he was sick and tired of it. Sometime, he spoke to Mr. Carr with reference to terminating the litigation. Mr. Carr declined to act for him, but introduced him to Mr. Marion C. Early, an attorney at law, with the result that Mr. Marion C. Early and Mr. E. M. S. Stew-

ard, another attorney at law, were employed by Mr. Barthels to represent him.

The letter of October 6th, hereinbefore set out was dictated by Mr. Early and signed by Mr. Barthels in the presence of defendant Garrels in Mr. Early's office.

On October 11th, Mr. Steward wrote to Messrs. Thompson as follows :--

"Gentlemen :—

Mr. August Barthels called upon me to-day and arranged with me to take charge of two cases pending in the Supreme Court of Missouri and one case pending in the Circuit Court here, in which cases, he advised me, you have heretofore represented him. He stated that you no longer are connected with the cases. I will enter my appearance in the same immediately.

Very truly yours,

(signed)    E. M. STEWARD."

This letter was received on the 12th day of October, 1916, and thereupon Mr. Ford W. Thompson, not being acquainted with Mr. Steward, interviewed the librarian of the St. Louis Law Library and ascertained that Mr. Steward had an office with Mr. Early; he then went to Mr. Early's office and finding Mr. Steward out, told Mr. Early that he was afraid that Mr. Steward was being made use of in a fraudulent attempt to defeat their rights as counsel for a client, and that he (Steward) was probably innocent, and thereupon Mr. Early stated that he had known Mr. Steward for a long time and that he would tell him (Steward), of the fact; that he (Thompson) had called to see him and send him (Steward) to Thompson's office.

Mr. Thompson further learned from Mr. Early that Mr. Steward had been in Eliot & Chaplin's office and that Mr. Chaplin knew him very well. He then went from Mr. Early's office to Chaplin's office, where he was assured by Mr. Chaplin that Mr. Steward possessed a good character, and that in all probability upon learning the true facts Mr. Steward would withdraw from the

matter, or state the circumstances under which he had been employed, and Mr. Chaplin also undertook to send Mr. Steward to Mr. Thompson's office.

On October 14th, Mr. Steward called and held a conversation with Mr. W. B. Thompson, in which he stated that the letter of October 6th, written by Mr. Barthels to Messrs. Thompson had been written by Mr. Garrels, and that Mr. Garrels had gotten Mr. Barthels to copy the assignment. Mr. Thompson requested Mr. Steward to put that in writing.

After Mr. Steward left, and on the same day, October 14th, 1916, he wrote Messrs. Thompson as follows:—

"Gentlemen:—

This letter treats further of the matter referred to in my letter to you dated October 11, 1916.

So far I have not entered my appearance in any cases in which Mr. August Barthels is interested, nor have I been employed to do so at the present time. I ask you to understand, however, that I do not intend to preclude myself from entering my appearance for him, if in the future he should see fit to employ me.

The work I have done for him to the present date is to prepare a release, which he acknowledged before me, and a copy of which I am enclosing to you. At Mr. Barthels request I am today mailing the original to the Clerk of the Supreme Court, together with a notice to the Clerk that you no longer represent him in his affairs before that Court. I also enclose to you a copy of said notice.

Very truly yours,

(signed)    E. M. S. Steward."

The enclosures referred to in said letter are as follows:—

"ACKNOWLEDGEMENT OF SATISFACTION OF JUDGMENT, FILED IN SUPREME COURT.

IN THE SUPREME COURT OF MISSOURI.

August Barthels, Respondent,

No. 18172.

William L. Garrels, Appellant.

In consideration of One Dollar, receipt of which is hereby acknowledged, I hereby release and satisfy all judgments, claims, and demands whatsoever which I have against William L. Garrels. I have not received, nor have I been promised any other consideration whatever for this release. Furthermore, I declare that any and all statements made by me or in my name which in any manner are derogatory to the good name and memory of Gerhard W. Garrels, deceased, and William L. Garrels were made under a misapprehension of facts, and the same are withdrawn and retracted because made under misapprehension and if allowed to stand uncorrected by me would be an injustice upon the memory of Gerhard W. Garrels, deceased, who was my life-long friend and for whose integrity and good name I have the highest respect and confidence, and I say the same of William L. Garrels.

(signed)    AUG. BARTHELS.

City of St. Louis. } ss.
State of Missouri

On this 13th day of October, 1916, before me personally appeared August Barthels, to me known to be the person described in and who executed the foregoing instrument, and who acknowledged the same to be his free act and deed.

In testimony whereof I have hereunto set my hand and affixed my official seal the day and year first above written.

My term expires Nov. 15, 1918.

(signed)    ELWOOD M. STEWARD,
Notary Public, City of St. Louis, Mo."

(seal)

"IN THE SUPREME COURT OF MISSOURI

August Barthels, Respondent,

vs,                    No. 18172

William L. Garrels, Appellant.

Messrs. W. B. and Ford Thompson were notified by me on October 6, 1916, to withdraw as my attorneys in above cause, and any acts by them performed for

me or in my name after that date are without any authority from me.

(signed)    AUGUST BARTHELS.''

On October 16th, Mr. Steward further wrote to Messrs. Thompson as follows:—

''Gentlemen:—

In reply to your communication of October 16, 1916, just delivered to me by your messenger:—

I find I am compelled to say, that of course I was not present when Mr. Barthels wrote you the letter dated October 6, 1916, to which you refer, so that I personally know nothing about the composition of said letter. If Mr. Bartels has said anything to me about it, I will have to treat his communication as privileged, and that I cannot make any statement about them until I have his permission. I have no doubt but what Mr. Barthels will tell you anything you want to know about the letter, but until I have his permission to the contrary, I must hold my obligation to him above anything else.

As stated in my letter of October 14, 1916, I have not been employed at the present time to do any work for Mr. Barthels except prepare the paper, a copy of which I sent you.

Very truly yours,

(signed)    E. M. S. STEWARD.''

Upon receipt of these letters Mr. Ford W. Thompson went to Jefferson City, and when the case was called on October 17th, called the attention of the court to the fact that a fraud was about to be committed on them as attorneys, and filed a motion on their own behalf setting out sundry matters, among others that they had a contingent fee of one-third and the filing of the release in that court, and that they had never been paid. The Supreme Court did not permit any argument, although Mr. Carr was there representing his client. On that state ment the case was submitted; and under date of the 5th of February, 1917, the Supreme Court dismissed the appeal on its own motion which was certified by the Clerk, its judgment and mandate reading:—

" . . .

Now at this day, it is considered and adjudged by the Court, of its own motion, that the appeal herein be, and the same is hereby, dismissed, without affecting the judgment of the said Circuit Court of the City of St. Louis rendered in this cause. It is further considered and adjudged by the Court that the said respondent recover against the said appellant his costs and charges herein expended, and have execution therefor.
. . . "

The mandate was filed with the circuit clerk in St. Louis on February 7, 1917.

On January 15, 1917, there was filed in the circuit court an acknowledgment of satisfaction of said judgment, sworn to by plaintiff before Myrtle B. Wood as notary, on January 10, 1917; which reads:—

" . . .

Plaintiff hereby acknowledged satisfaction of judgment in the above entitled cause.

(signed)    AUG. BARTHELS,
                                        Plaintiff.
. . . "

On January 19, 1917, and at the same term in which said acknowledgment of satisfaction was filed, Messrs. Thompson filed their motion to set aside the satisfaction of said judgment as to their one-third interest, and to issue an execution in the sum of three thousand dollars with interest thereon from the date of the entry of said original judgment, to-wit, the 23rd day of April, 1913

Mr. Ford W. Thompson testified that before instituting suit upon which the judgment was recovered, his firm made a contract with August Barthels the plaintiff, to prosecute this case upon a contingent fee of one-third. Mr. W. B. Thompson testified that he was present when the contract was made with Mr. Barthels. Mr. Barthels testified that he employed the Thompsons "so to say;" that they represented him in other litigation, some of it being the Las Vegas affair, which was a suit against the Franklin Bank; that he remembered employing them in

206 M. A.—14

that suit and also the one against Garrels. He testified:—

"Q. What, if any arrangement, did you have with Mr. Thompson regarding a fee? A. I don't think I had any arrangement with Mr. Thompson; all I heard of was from Mr. Buddecke, that they were to charge one-third.

"Q. You say that Mr. Buddecke told you that? A. Yes, sir.

"Q. At all events you came down to—that is, coming down to the matter of the acknowledgment of satisfaction of judgment, will you please state to the court in your own way how that came to be done? A. I had a five thousand dollar note against William A. Buddecke which came due sometime last year, about May; and he had repudiated this claim; he claimed it was settled in an agreement we had, and also referred to Garrels, W. L. Garrels, that he had been present at that time: and the attorney I engaged down in Washington County, he advised me to look up these affairs, which I did, and in that way I came in contact with W. L. Garrels, looking up these claims he made, that should have accrued then; I knew it didn't, and the contract was showed and nothing showed in it; and through this litigation I got sick and tired of it, because Buddecke tried to beat me out of this five thousand dollars; I am sick of all litigation; I want to get out of it.

"The Court: How did Buddecke happen to tell you that arrangement with Mr. Thompson was one third? A. That I don't know, but I know that he told me one time.

"The Court: Did Buddecke know Thompson? A. Yes, he informed me so.

"Mr. Carr: He was a client of Thompson's? A. Yes, sir.

"The Court: They were handling this damage suit on a contingent fee? A. Yes, sir.

"The Court: If they were able to get anything, they were to get a share? A. Yes, sir.

"The Court: And if they did not get anything, they weren't to get anything. A. Yes, sir.

"The Court: And Buddecke told you that they were to charge you one third? A. Yes, sir.

"The Court: And that was satisfactory, was it? A. Yes, sir.

"The Court: So you settled this case with Garrels because you were getting sick and tired of the case? A. No settlement at all; I just throwed it all aside.

"The Court: In whatever way you settled it, you wanted to get rid of it because you were getting sick and tired of it? A. Yes, sir.

"The Court: Did you make Garrels a present of that judgment of nine thousand dollars? A. Yes, sir, I did.

"The Court: You are very liberal? A. Yes, sir.

"The Court: If I had a judgment of nine thousand dollars they would have to pay me. A. Yes, sir: I didn't see anything in it, your honor.

"Q. Now when did you offer, if you—or did you offer to dismiss this damage suit or judgment against Mr. Garrels at any time? A. Oh, I told Mr. Garrels I was sick and tired of all litigation, I wanted to get out of it in any which way I could, because Buddecke tried to beat me out of this five thousand dollars; I told him I didn't want anything to do with it; I wanted to get out of it, and this remark—and after you were to take it, after you refused, I got Mr. Early to take my case; Mr. Early and Mr. Steward to handle it for me, to withdraw the litigation.

"The Court: Why didn't you go to the Thompsons if they had been your attorneys? A. I didn't want anything more to do with them, because they were friends of Buddecke, and I didn't want to have anything to do with Buddecke; I wanted to get out of it; I was tired of it."

He further testified that he had never received any money or other consideration for dismissing the suit or acknowledging satisfaction of the judgment, and that there was no agreement or promise or understanding

that there was to be any money paid or any consideration. That defendant Garrel's father had been his friend and employer.

He further testified that he was now an employee. of the Franklin Bank; that he got the job himself by applying to President Riddle; that he did not know that the affidavit he made in the Las Vegas case contained defamatory charges against Mr. Garrels; did not claim that the statements in his own affidavit were true; and did not authorize his attorneys, who prepared the affidavit, to include any charges of fraud therein.

There was evidence by a process server and an officer of the court, the purport of which was that defendant Garrels was evading the service of the motion filed by Messrs. Thompson to set aside his entry of the satisfaction of the judgment; and that Mr. Carr, defendant's attorney, was not in a position to advise them where they could locate defendant Garrels to procure service.

Appellant contends, that the evidence fails to disclose a contract for contingent fees between plaintiff and movents; and that the fiduciary relationship of attorney and client then existed at the time of entering into the alleged contract, in consequence whereof, the burden of proof was upon movents to show that there was a contract, and that it was fair and just and no unfair advantage taken of their client in its procurement, and that the agreed fee was a reasonable one.

As an abstract legal proposition the rule contended for is correct, Thompson v. Stearns, 197 Mo. App. 344, 195 S. W. 43; Morton v. Forsee, 249 Mo. 409, 145 S. W. 765; Mills v. Metropolitan Street Ry. Co., 221 S. W. (Mo.) 1, l. c. 5.

The plaintiff, while testifying as a witness for defendant, admitted that the arrangement or understanding was that the movents were to have one-third. He further expressed himself as being satisfied with that arrangement. And while he did not deny that the arrangement was made directly with Messrs. Thompson, he stated

that he though it had been through his then friend, Buddecke.

The nature of the case and the history of the case discloses sufficient data to warrant the court in finding that the contract of employment was fairly entered into, that no undue advantage was taken of their client, and that the services rendered were reasonably worth the contingent fee agreed upon. The learned trial court having so found, we are unable to disturb its judgment, because it appears to have been supported by ample evidence.

Appellant contends that where an attorney is employed on a contingent fee basis consisting of a percentage of the amount recovered, and the client compromises the case, the amount for which the case is settled is the basis on which the attorneys percentage is to be computed.

By the institution of the suit for plaintiff against defendant, and in which the movents appeared as the attorneys of record for plaintiff, a notice of the existence and terms of a contract of employment is not required to be served by the movents upon defendant in order to have and maintain a lien under section 964, Revised Statutes of Mo., 1909. Taylor v. Transit Co., 198 Mo. 715, 97 S. W. 155. Plaintiff's lien therefore attached to plaintiff's cause of action, and to the judgment thereon, immediately upon its rendition.

Movements were summarily discharged by their client. Thereupon they had the option either to treat the contract as rescined and sue for the reasonable value of their services, or treat the cause of action of the client as liquidated by its reduction to judgment (liable of course to be upset by the results of an appeal). [Mills v. Metropolitan Street Ry. Co., supra.] They chose to treat the cause of action as liquidated in amount by the judgment rendered.

The appeal taken to the Supreme Court was without bond, and if property of the defendant had been located upon which to levy, they would doubtless have realized

upon their lien. The lien was not superceded by the defendant's appeal.

The action of the Supreme Court in dismissing the appeal can be taken in but one light, namely, that it did not desire to ingraft on the cause, a special proceeding of trying the issues of fact relative to setting aside the release of the judgment, made after appeal and in that court, and enforcing the attorneys lien by awarding execution. What it did was to dismiss the appeal leaving the judgment impressed with the lien in favor of movents. [Wait v. Ry, 204 Mo. 491, 103 S. W. 60; Hammond W. & E. C. Ry. Co. v. Caput, 110 N. E. (Ind.) 109.]

The plaintiff did not appear to be satisfied with the prospective action of the Supreme Court; and in anticipation thereof, filed a so-called satisfaction of judgment in the Circuit Court prior to the determination of the appeal by the Supreme Court.

No motion appears to have been made to enter of record the satisfaction of said judgment (Section 2143, R. S. of Mo. 1909), although the document was filed in term time, both parties treating it as an accomplished fact. Movents however, at the same term filed their motion to set aside this entry of satisfaction and to award execution to the extent of their lien. This method of procedure was proper. [Smoot v. Shy, 159 Mo. App. 126, 139 S. W. 239; Curtis v. The Metropolitan Street Ry. Co., 118 Mo. App. 341, 94 S. W. 762; s.c. 125 Mo. App 369, 102 S. W. 62.] Notwithstanding the attorneys had a lien on the judgment, they did not thereby deprive plaintiff of all control over the litigation.

On the other hand, the lien of the attorneys could not be thrown or flittered away by their client, because their lien was upon the judgment and would not follow further, unless there were some proceeds of the judgment in which event the lien would go from the judgment to the proceeds thereof, provided there was no fraud or collusion in fixing the amount of the proceeds. [United Railway Co. v. O'Connor, 153 Mo. App. 128, 132 S. W. 262.]

Here we have a client undertaking to give away, if we give literal interpretation to his testimony, not only his rights in a judgment that would and did become final, but likewise to give away the lien of his attorneys, a gift manifestly so contrary to the interest of the attorney's Lien Act, that would be impossible to uphold such satisfaction on that score. We agree, however, with the trial judge that the evidence of the satisfaction of the judgment was the result of collusion if not of fraud. His reasons for not going to the attorneys who had procured his judgment against Garrels are flimsy. He does not claim any friction with movants. Their refusal to pitch his suit against another of their clients and advising him of the reason therefor, was in strict accord with the ethics of the legal fraternity. His admitted avoidance of communication with movements by letter or phone, or personally, when his case was at a stage in the appellate court demanding attention is put upon the ground of rising animosity towards his late friend Buddecke, over a note of some five thousand dollars then about to be "outlawed" because of lack of payments made thereon. He embarked upon that litigation, at the same time foreswearing the love of legal combat where a much larger sum was involved. That appears to raise an irrepressible conflict between his declared abhorrence of litegation and his acts.

When Mr. Carr, the attorney for defendant Garrels, refused to draw up the discharge of plaintiff's attorney's, and the dismissal of the case and satisfaction of the judgment, he too recognized the propriety of the ethics due under the circumstances from "afar off" and acted accordingly.

We then find the plaintiff procuring other able counsel, and at their dictation writing in longhand, in the presence of the defendant, a letter of dismissal of his attorneys, not only in this particular litigation, but in all his other litigations with which they were connected. And then in the Supreme Court we find the plaintiff taking back the solemn averments of an affidavit filed in liti-

gation against the bank by which he is later employed; and changing his attitude toward the defendant against whom he held a judgment for libel, that included both actual and punitive damages aggregating nine thousand dollars, and averring that he had the highest respect and confidence for the integrity and good name of such defendant. To an ordinary man that would have been the last straw, but not so with plaintiff, for he must have been importuning his other attorney, Mr. Steward, to prepare in advance of final action by the Supreme Court a satisfaction of the judgment to be filed in the Circuit Court. This was followed by the defendant's evasion of process of service of the motion of movents, coupled with his failure to testify, while claiming an advantageous position under the plaintiff on whom was the burden of justifying his action in settling the judgment for less than its face. [In re. Salant, 104 N. E. (N. Y.) 1140.]

We are therefore of the opinion that the order of the Circuit Court setting aside the satisfaction of the judgment, as to the amount of the attorneys fees agreed upon between plaintiff and movements, and directing execution therefor was right and proper.

In view of the above and foregoing the Commissioner recommends that the order of the trial court setting aside the satisfaction of the judgment, *pro tanto,* and directing that execution issue thereon be affirmed.

PER CURIAM: The foregoing opinion of BARNES, C., is adopted as the opinion of the court. The order of the Circuit Court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.